# MANUÉLA MANRIQUE DE LARA DE GARROSI, Plff.,

## *v.*

# TOMÁS GARROSI AND JUANA MARIA GONZALEZ, Dfts.

San Juan, Equity, No. 958.

### As to Setting Aside Fraudulent Conveyances.

Equity—Request in Brief for Special Finding of Fact—Findings of Fact under § 649, of Revised Statutes—Facts Stated in the Opinions of the Court.

1. A brief is not the proper channel through which to request findings of fact, and apart from this, equity cases do not come under § 649 of the Revised Statutes; the court, however, through necessity to reach a conclusion often states facts in its opinions, and these will be considered as found in so far as this court is concerned.

Jurisdictional Amount.

2. Where the amount to give this court jurisdiction is not stated definitely in the bill, but it is alleged that the property of the defendant husband is between $100,000 and $200,000, and the plaintiff wife's interest, if she has any at all, exceeds $1,000 under the Porto Rican statute, this allegation will be sufficient to give the court jurisdiction.

Equity—Jurisdiction—Federal Courts—Local Courts—Reformation of Pleadings.

3. Where equity covers a subject, legislation extending the same right to the local law courts does not affect the jurisdiction of a Federal court of equity, and the pleadings must be reformed to conform to the procedure in the Federal courts.

Res Judicata.

4, 5. Where one court finds that on a given date a party has no

---

Note.—The question as to whether the profits accruing during marriage in connection with property belonging to the separate estate of either spouse are community property is discussed in a note in 31 L.R.A.(N.S.) 1092.

Garrosi v. Garrosi.

property, it does not necessarily follow that the same is true on a different date and in a proceeding for a different purpose; and where two different persons sue a defendant at different times, the decision in one case is not *res judicata* as to the other.

Evidence—Admissions.

6. Where a witness in a case gives certain evidence, this evidence is admissible in a subsequent suit in which the witness is a party as admissions.

Evidence—Presumptions on Account of Relationship.

7. There is no presumption of fraud on account of the relationship of the parties.

Antecedent Conveyances—Fraud.

8. A plaintiff cannot complain of conveyances made by the defendant before the plaintiff became a party to the contract unless it be shown that the conveyances were made with intent to defraud him.

Contracts—Fraud.

9. From the earliest times and practically by all law, fraud has been condemned and contracts tainted with fraud are vitiated.

Contracts—Fraud—Conveyances—Equity.

10. Even where the conveyances have been regular a court of equity will look beneath the surface, and where it is shown that the transactions were simulated it will be held that the alleged vendee holds the property as a mere agent or depositary of the vendor.

Marital Rights—Conjugal and Separate Property.

11. Whatever property either spouse owned before marriage remains the separate property of the spouse so owning it, but the increase of that property above the necessary expenses of maintenance and support of the family is considered conjugal property and must be accounted for as such.

Submission of Case—Main and Ancillary Cases Pending in Different Courts.

12. Where the case pending in this court is ancillary to a case before a local court, and while this court has its case under submission the local court decides the main case, this court will not dismiss the case pending before it until a decree of the Porto Rican court of last resort has been obtained, or the time in which to appeal has expired.

Prescription.

13. Where one simulates a conveyance of property to another but

Garrosi v. Garrosi.

retains its beneficial use, the ownership of the property has not changed and prescription does not begin to run.

Opinion filed July 19, 1916.

## Statement of Facts.

The bill in this cause was filed June 24, 1915, and alleges that the plaintiff is the wife of the defendant Tomás Garrosi. That she was a subject of the king of Spain and a resident of Porto Rico, and that defendant Garrosi and also defendant Juana Maria Gonzalez are citizens of France, residing in Porto Rico. That in 1905 plaintiff met the defendant Garrosi in Spain and contracted marriage with him at Barcelona. That upon their coming to Porto Rico, plaintiff, for greater security, insisted upon a remarriage July 3, 1908, in San Juan, in due form. That defendant Garrosi abandoned her in Spain in July, 1914, and that she sued him for divorce at Ponce, Porto Rico, in the local district court, in cause No. 4267 on the civil docket. That in said action she prays, in addition to divorce, a liquidation of the assets of the conjugal society (gananciales), and allowance of alimony, *pendenle lite* and permanent, under §§ 168 and 177 of the Civil Code of Porto Rico. That in said suit defendant Garrosi has alleged under oath that he possesses no property, while plaintiff now asserts that the defendant Garrosi was worth at the time of their marriage in excess of $200,000, and that his dispositions thereof have been fraudulent and fictitious. That in May, 1886, by an inventory made by said defendant, he was found to be the owner of property valued at $275,000, Provincial currency, which in United States currency is $165,000, of which amount $80,000 was in gold; and that said capital has increased,

and was at the time of their marriage larger than before. That defendant Juana Maria Gonzalez is the illegitimate daughter of defendant Garrosi's father and has from her birth lived with her father and defendant Garrosi, and the latter has for more than fifty years been providing for her in his house and treating her as a sister. That said defendant Gonzalez never has had any means of her own, except what has been fraudulently transferred to her by her said brother, and that she is without ability to manage her affairs. That on May 31, 1889, said defendant Garrosi loaned $48,000 by deed on a certain cane plantation known as "Maria Antonia," which defendant Garrosi transferred to defendant Gonzalez, and that on July 1, 1901, the original owners repaid this indebtedness of $48,000 to defendant Garrosi, who purported to act as attorney in fact of defendant Gonzalez. That in 1900 defendant Garrosi acquired a mortgage for $23,-680 on the coffee property known as "Leonor," and thereafter said defendant Garrosi sold the property under the mortgage and acquired the title at the foreclosure sale, in 1902 transferring it to said defendant Gonzalez. That after other transactions the property "Leonor" was, on January 24, 1911, fraudulently transferred to said defendant Gonzalez in payment of a simulated indebtedness of $18,000, all without the knowledge or consent of plaintiff, who was then married to defendant Garrosi. That in 1900 defendant Garrosi acquired a coffee plantation known as "Luisa" under a mortgage for $20,000, but the value was greatly in excess thereof, and in 1902 transferred this property to defendant Gonzalez for a fictitious consideration. That she, as in the "Leonor" instance, retransferred the property to defendant Garrosi, and on June 16, 1910, he executed a fraudulent mortgage in her favor for $18,000, but no money

was paid by said defendant Gonzalez, and on January 24, 1911, he fraudulently deeded the property to defendant Gonzalez, both of said latter transactions being without the knowledge or consent of plaintiff. That in 1891 Garrosi loaned 10,470 pesos on another coffee plantation, and collected the amount after his marriage to plaintiff. That the properties so transferred to defendant Gonzalez really belonged to defendant Garrosi, and defendant Gonzalez is merely a figurehead, and that defendant Gonzalez, gave him a full power of attorney to manage said properties for her. It is in evidence she made a will to him. That in 1906 and 1907 defendant Garrosi acquired the various participations of the owners of the sugar-cane plantation "Concepción," worth more than $25,000. That said defendant has also deposited at different places money in excess of $200,000. That, nevertheless, defendant Garrosi has testified that he owns no property, that his only source of income is $40 per month paid him by defendant Gonzalez for administering said property. The plaintiff avers this is false. Then follows prayer for accounting, etc.

On June 28, 1915, plaintiff filed an amendment to one paragraph of the bill, and thereafter, on June 29, this was incorporated in an amended answer, giving fuller details.

On July 24, 1915, defendant Tomás Garrosi filed an answer admitting his marriage with plaintiff on June 3, 1908, but denying many other material allegations of the bill, except proceedings for divorce, and as to this defendant shows that he had filed a cross complaint for a divorce. As to defendant Gonzalez, this defendant alleges that she, during many years prior to 1900, cared for defendant Garrosi as housekeeper and nurse, especially during a serious illness abroad, but that she is not related to him at all. The acquisition of properties set up in the bill is admitted, but the transfers to defendant Gon-

Garrosi v. Garrosi.

zalez are alleged to have been for good and valuable consideration from her. That the said properties never entered into the assets of the conjugal society, nor was there ever any community property, all the transactions being made in good faith for value and being Garrosi's separate property, in which plaintiff never had any interest. That the transfers so attacked are protected in articles 1262 (2) and 1266 of the Civil Code and §§ 34, 36, and 37 of the Mortgage Law, and that even if the transfers were simulated and fictitious, they were of his own property, of which he could dispose as he saw fit.

A supplemental answer was filed March 16, 1916, setting up that the supreme court of Porto Rico, on January 26, 1916, affirmed the judgment of the Ponce district court of May 17, 1915, for alimony, deciding that Tomás Garrosi owned no property, which said defendant claims as *res judicata.*

The answer of defendant Juana Maria Gonzalez was filed March 16, 1916, after publication against her, and denies knowledge of most of the allegations of the bill. It alleges that she rendered valuable services to her codefendant prior to 1900 as housekeeper and nurse, she not being any relation of said Garrosi, and that she made him her attorney in fact. Her allegations as to the different pieces of property set out in the bill substantially follow the lines of the answer of her codefendant.

Evidence was taken by special commissioner and also in open court upon the hearing on March 16, 1916. Part of plaintiff's testimony was the evidence of Juana Maria Gonzalez in the previous suit of Dastas v. Garrozi, No. 107 Equity of this court at Ponce. The case was argued and submitted to the court on briefs.

*Messrs. F. H. Dexter* and *F. G. Perez Almiraty* solicitors for plaintiff.

Garrosi v. Garrosi.

*Mr. José A. Poventud* solicitor for defendants.

HAMILTON, Judge, delivered the following opinion:

This is a bill filed on the equity side of this court in aid of the marital property rights of a wife in the local district court at Ponce. That there is such a jurisdiction in this court was declared, 8 Porto Rico Fed. Rep. 214, and this decision has been affirmed by the circuit court of appeals. A number of questions arise which will be considered seriatim.

1. The defendant in his brief requests that a special finding of fact be made. This is probably intended to be under Revised Statutes, § 649, Comp. Stat. 1913, § 1587, as to special verdicts. It may be remarked that this request of the defendant is made only in his brief. There is no paper on file to this effect. A brief is a place only for the argument of matters of law or fact, and not for any pleading, motion, or any step in litigation. A case is complete when submission is made, whether briefs are ever filed or not. But, even apart from this, an equity case is not one coming under the above section of the Revised Statutes. The court is not required by law to make any special finding of facts, except in the nature of a special verdict.

It is to be added, however, that the court, as a matter of necessity in writing an opinion, states many, if not all, of the facts which are necessary to reach the conclusion arrived at. This will be found true in the present opinion; and the facts so stated are to be considered as found by the court, and, so far as this court is concerned, may be acted upon accordingly.

2. Among the preliminary questions raised by the defense is that the amount in dispute in this case is not of the statutory

amount of $1,000. Whether what is intended is to be regarded as the matter in dispute, the subject in dispute, or the amount in dispute, is probably not material. As at present presented, these expressions would probably cover the same thing. Blackburn v. Portland Gold Min. Co. 175 U. S. 571, 44 L. ed. 276, 20 Sup. Ct. Rep. 222, 20 Mor. Min. Rep. 358; Hawkins v. Cleveland, C. C. & St. L. R. Co. 39 C. C. A. 538, 99 Fed. 322. In the case at bar the allegations of the bill seem to be that the property of the defendant husband is between $100,000 and $200,000, and the interest of the wife in this, if she has any at all, under the Porto Rican statutes exceeds $1,000. How far the proof goes need not be considered at present. This objection is not well taken.

3. It is also contended by the defendant that the plaintiff has an adequate remedy at law, and under the Judicial Code, § 267, a court of equity in such cases has no jurisdiction. It is true that this is not now raised by any distinct pleading. Incidentally it has already been passed upon, but the contention of the defendant is that this is jurisdictional allegation, which can be raised at any time. Kane v. Luckman, 131 Fed. 609; Marthinson v. King, 82 C. C. A. 360, 150 Fed. 49. The point should receive full treatment.

Thus it is contended that this case is analogous to one for a discovery, and it is alleged that the local law makes ample provision for discovery. Ex parte Boyd, 105 U. S. 647, 26 L. ed. 1200. The Code of Civil Procedure, §§ 269–276, supplies what is often called supplemental proceedings, designed to obtain from the defendant and others a discovery of his assets. It is not clear, however, that this takes away the jurisdiction of

a court of equity. The fact that a local law provides for discovery is not conclusive. In the first place, equity has always had such a proceeding as discovery, and its being allowed at law does not take away the equitable jurisdiction.

Whether this was provided for by the local law before there was any equity law on the Island, it is unnecessary to determine. The Organic Act of 1900 gave the Federal court the usual jurisdiction of courts of equity, while the Code of Civil Procedure, which contains the supplemental procedure in question, was not adopted until 1902. What was in the Spanish Code of Civil Procedure, adopted in 1881 and extended to Porto Rico in 1885, is not shown, and it was repealed by the new Code of Civil Procedure in 1902. There would seem to be applicable, therefore, the ordinary rule that where equity already covers a subject, legislation extending the same right to law courts afterwards does not affect the jurisdiction of a court of equity. In such case the provision of the Judicial Code above quoted does not apply.

It might be added that even if the remedies relating to rescission and annulment provided by the Civil Code of Porto Rico in §§ 1262 and 1266 and the Mortgage Law in articles 36 and 37, were to be deemed adequate for the facts of such a case as the one at bar, this would not change the further rule that proceedings in a Federal court, even where they enforce the local law, are to be reformed and rewritten so as to preserve the distinction prevailing in the Federal courts between law and equity. In other words, if the plaintiff and defendants in the suit at bar can come into the Federal court on account of their diverse citizenship, it would make no difference whether there was an ad-

equate remedy under the local law or not. If there was such an adequate remedy, it would not prevent enforcement of this remedy in the Federal court by the proper procedure at law or in equity, as the nature of the case would require.

4. The defendants set up in their pleading and evidence that the local district court of Ponce on May 17, 1915, affirmed by the local supreme court January 26, 1916, has determined in a suit between this plaintiff and the main defendant that this defendant Garrosi owns no property, and that this determination is *res judicata* and cannot be re-examined in the Federal court. There is no doubt that an issue determined by a local court between the same parties binds them in proceedings in every other forum. It does not follow, however, that a finding one year that a man has no property is necessarily true the next year. The only issue that is found, the only *res* which can be said to be *judicata,* is that at a particular date he did not have property for the purposes of that proceeding. In the finding now relied upon the local court held that Garrosi was without property for the purposes of alimony. It would be going too far to say that this was a finding that he had no property in which his wife would have marital rights at the dissolution of the marriage, whether by divorce or death. There would not be, in other words, the same issue before the two courts, and the finding of the one would not necessarily be *res judicata* in the other, particularly where the latter calls for discovery and the former did not.

5. A somewhat similar point is raised as to lands now attacked in the hands of Juana Maria Gonzalez. In the case of Garrozi v. Dastas, 204 U. S. 64, 51 L. ed. 369, 27 Sup. Ct. Rep. 224, these same defendants were involved, although the assault

Garrosi v. Garrosi.

upon the defendant Garrosi was made by a former wife, and not by the present plaintiff. It seems that this former wife sought a divorce and a dissolution of the marriage property partnership, and that the matter went from this court sitting at Ponce to the Supreme Court of the United States. Garrozi v. Dastas, supra, page 64. The point at present under discussion, however, is not the Supreme Court decree, but the one rendered in this court February 4, 1907, carrying out the principles enunciated by the Supreme Court. The decree in question decides that some of the lands now attacked as belonging to defendant Garrosi were really property of Juana Maria Gonzalez, and as such immune from the attack of Garrosi's former wife. Garrosi is unfortunate in having the same kind of an assault made upon him by two successive wives, but the action of wife No. 1 is not *res judicata* as to wife No. 2. The legal principle is that every one is entitled to his or her day in court, whether he or she happens to be a first or second consort, or otherwise connected with the other party to the suit. It is true that the evidence in the one case if repeated in the other would be very persuasive, but this is a matter of weight of evidence, and not of conclusiveness of former decree.

6. In the case at bar, certain evidence was taken by the plaintiff before defendant Juana Maria Gonzalez had been made a party defendant, and it is now contended that there is not enough evidence in the case to bind her after she was made a defendant. It is doubtless true that evidence taken before the cause was at issue as to her is not binding upon her. The court so ruled when the evidence was offered. But the question arises, whether the evidence of Juana Maria Gonzalez given in the case of Garrozi v. Dastas, supra, may be used against her in the case

IX. Porto Rico.—6.

Garrosi v. Garrosi.

at bar. This evidence was admitted; but it is contended that the ruling should be changed and the evidence excluded, because there is nothing in the case to show that the witness was out of the jurisdiction, and therefore subject to have her former statements used against her under the Porto Rican Law of Evidence, § 35, subd. 6.

There is no question that the general principles of evidence are the same at law and in equity. And it may be conceded that the Porto Rican Law of Evidence, adopted in 1905, is but a digest of the general common-law rules on that subject. This court has frequently followed the rules so enunciated, but not because they were law so much as because they were right. It is to be presumed that the Porto Rican Law of Evidence was adopted to meet conditions of the Porto Rican courts, that is to say courts without a jury and courts without equity jurisdiction, just as was the case in California and other Western states, from which the code was adopted. The Porto Rican Law of Evidence, § 35, declares that " . . . evidence of the following facts may be given upon the trial: . . . (6) The testimony of a witness deceased, or out of the jurisdiction, or unable to testify, given in a former action between the same parties, relating to the same matter." This does not apply to the case a bar, for the previous action was not between these same parties. No implication can be derived from this section one way or the other. The evidence of Juana Maria Gonzalez was introduced not so much as that of a witness, as the previous admissions of a party to the suit at bar. It is always admissible to introduce the statements of a party at least so far as to bind the party himself. This rests upon the general rule that it is unnecessary to prove what a party admits. It is not perceived

that any error was committed in admitting the previous testimony of Juana Maria Gonzalez.

7. The Porto Rican Law of Evidence is further referred to on the subject of presumptions. Thus presumptions, unless controverted, are to control. § 100. Civil Code, § 1218. Among such disputable presumptions are that (19) private transactions have been fair and regular, (2) the ordinary course of business has been followed, and (38) that there was good and sufficient consideration for a written contract. Porto Rican Law of Evidence, § 102. It is also in this law, §§ 71 and 76, that entries in the public records made in pursuance of official duty are prima facie evidence of the facts recited. Even less doubtful are the provisions of the Civil Code, such as §§ 1186, 1241, and 1244, which are as follows:

"Sec. 1186. Public instruments are evidence, even against a third person, of the fact which gave rise to their execution and of the date of the latter.

"They shall also be evidence against the contracting parties and their legal representatives with regard to the declarations the former may have made therein."

"Sec. 1241. In contracts involving a valuable consideration, the prestation or promise of a thing or services by the other party is understood as a consideration for each contracting party; in remuneratory contracts, the service or benefits remunerated, and in those of pure beneficence, the mere liberality of the benefactor."

"Sec. 1244. Even though the consideration should not be expressed in the contract, it is presumed that it exists and that it is licit, unless the debtor proves the contrary."

Such presumption, however, is disputable, especially in equi-

ty, which looks not to the forms and the presumptions from the forms, but to the actual facts and intent of the parties concerned. It is doubtless true, also, that there is no presumption of fraud arising from the relationship of the parties. This fact merely calls for closer scrutiny. Relationship is not a crime, but from its very nature it denotes interest of one person in another, and the possibility, if not disposition, to help each other. Vansickle v. Wells F. & Co. 105 Fed. 16; Shealy v. Edwards, 75 Ala. 411; Smith v. Collins, 94 Ala. 394, 10 So. 334; Gottlieb v. Thatcher, 151 U. S. 271, 38 L. ed. 157, 14 Sup. Ct. Rep. 319. The retention of land by a grantor is not evidence of fraud (Miller v. Rowan, 108 Ala. 98, 19 So. 9), although there is to be remembered that a presumption, also appearing in the Porto Rican law, is that a person owns that of which he is in possession and over which he is exercising acts of ownership. Law of Evidence, § 102 (11 and 12).

8. The plaintiff was married to defendant Garrosi July 3, 1908, and the defendants set up that she cannot complain and seek to set aside conveyances made before that time, on the same principle that creditors cannot complain of antecedent conveyances, that is to say, conveyances made before they became creditors. This is true even if such antecedent conveyances were voluntary, whether without any adequate consideration, or even gifts. Horbach v. Hill, 112 U. S. 144, 149, 28 L. ed. 670, 672, 5 Sup. Ct. Rep. 81; Schreyer v. Scott, 134 U. S. 405, 33 L. ed. 955, 10 Sup. Ct. Rep. 579; Adams v. Collier, 122 U. S. 382, 30 L. ed. 1207, 7 Sup. Ct. Rep. 1208; Wallace v. Penfield, 106 U. S. 260, 27 L. ed. 147, 1 Sup. Ct. Rep. 216. There is the important qualification that a subsequent creditor can set aside a conveyance made with the express intent to defraud him, as

Garrosi v. Garrosi.

where a party in expectation of contracting debts conveys away his property. This is an instance of where actual fraud avoids the transaction even in favor of a person not at the time a creditor. Wilson v. Stevens, 129 Ala. 630, 87 Am. St. Rep. 87, 29 So. 678.

9. There is no doubt about these principles throughout the United States and wherever the common law prevails, but it is doubtless true that the law known as the 13th of Elizabeth, reinforced by the 27th and 29th of Elizabeth, designed to avoid conveyances and acts to hinder, delay, or defraud creditors, necessarily did not apply to Porto Rico, and cannot now be extended to Porto Rico by the courts. The Organic Act, § 37, expressly maintains the Porto Rican law existing at the time of acquisition of sovereignty by the United States and other laws passed amending these laws. The statute of Elizabeth may, therefore, be said not to apply in express terms to Porto Rico, although it may be in the "equity" of the Constitution, which is applied to Porto Rico by the Organic Act. It remains true, however, that under the Spanish law, as under all civilized law, fraud vitiates contracts. The principle that no one can take advantage of his own wrong is as old as law itself, and if there was no express statute on the subject the principle of the Civil Code, declared in § 7, would prevail, that "when there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration."

Fraud has been condemned in all law. The oldest extant Code is perhaps that of Hammurabi, antedating the Mosaic leg-

Garrosi v. Garrosi.

islation, and in this Code many instances are mentioned of fraud which vitiates transactions. It is of course, however, characteristic of early law, such as this, and even the Roman Twelve Tables, that specific instances are denounced and general principles are not announced. Under the classical Roman law fraud was known as *dolus,* sometimes *dolus malus,* and by the praetor's edict invalidated contracts (Sohm Inst. 85). The presumption of good faith is declared in the Code of Justinian, 2, 21, 6. By this time the principle is announced, but fraud is described rather than defined. Labeo, whose words are adopted in the Digest, describes *dolum malum* as *"omnen calliditatem, fallaciam machinationem ad circumveniendum, fallendum, decipiendum alterum adhibitam."* Digest 4, 3, 1, § 2. Fraud is one of the fundamental grounds of equitable jurisdiction, and has been such from the beginning of the English chancery system, As Lord Hardwicke expressed it, "the court very wisely hath never laid down any general rule beyond which it will not go, lest other means of avoiding the equity of the court should be found out." Lawley v. Hooper, 3 Atk. 278, 26 Eng. Reprint, 262. The Code Napoleon declares, art. 1116, that fraud makes voidable an agreement "when the stratagems [manœuvres] practiced by one of the parties are such that it is evident that without such stratagems the other party would not have contracted. It is not to be presumed, but must be proved." Code Napoleon, art. 1116. The same principle can be traced through the Spanish legislation from the Roman times to the present.

"Fraud of creditors" (enageñacion en fraude de acreedores) is as well known a title in the civil law reports as at common law. The basic law on the subject was Law 7 of title

Garrosi v. Garrosi.

15 in the 5th Partida. That, omitting the prescription period of one year as inapplicable here, reads as follows: "Cases in which the sale of properties to the detriment of creditors may be revoked. A personal debtor is one whose liability rests upon his debt and not upon his property. It happens sometimes that a debtor of this character, after being directed by a judgment of a court to pay what he owes, or having been ordered to turn over all his properties, such debtor sells all his properties so that nothing is left for delivery to the persons entitled thereto. Wherefore, we say that such a sale can be set aside by the persons entitled to receive the properties. . . . For it is to be presumed that he who sells his properties in that manner does it maliciously or deceitfully. The same we say will be the case if such debtor during his lifetime should give away or bequeath to another person any one of his properties. If from what he retains his creditors could not be paid, then such gift or legacy should be set aside in the manner above set forth. And if it should happen that he had not disposed of the thing either by gift or bequest, but by making sale thereof, or exchanging it, or giving it in dowry or in pledge, then we say that if it can be proved the person who received said thing in any one of the manners described had knowledge that the debtor was making said alienation with malice or deceit, the same may be set aside. . . ."

Among decisions upon this may be cited No. 53, Feb. 9, 1881, 45 Jur. Civ. pp. 238, 242; and No. 168, April 18, 1881, 46 Jur. Civ. pp. 23, 28, where, however, the court held that the facts did not come within the law. The Civil Code, adopted 1889, preserves the same principles. The Porto Rican Civil Code, § 1258, taken from the Spanish Civil Code, art, 1291,

Garrosi v. Garrosi.

declares that' contracts may be rescinded which are executed in fraud of creditors when the latter cannot recover in any other manner what is due them, and a court of equity is not limited to the remedies given by law. As construed in Dastas v. Garrozi, supra, this means that Porto Rican creditors may avoid fraudulent contracts. This is quite analogous to the Statute of Elizabeth. Civil Code, § 1068 (Span. 1101), subjects those guilty of fulfilling their obligations fraudulently to the payment of damages, and § 1069 declares that "liability arising from fraud is demandable in all obligations." Under § 1074 (Span. 1107) "in case of fraud a debtor shall be liable for all losses and damages which may clearly originate from nonfulfillment of the obligation." Even the Mortgage Law protecting registered conveyances makes an exception in the case of fraud. Arts. 37 and 41.

There is no doubt that in England, even if there had been no Statute of Elizabeth, courts of equity would have found a way to avoid all transactions tainted with fraud, and the same principle obtains and is enforceable under the provisions of the Spanish civil law above noted. The Federal court, therefore, is not hampered by the fact that the Statute of Elizabeth possibly does not apply to Porto Rico. Any person defrauded will receive the aid of this court.

10. Several of the conveyances complained of do not come under the head of fraud in the ordinary sense of the word. Defendants rely upon the regularity of conveyances, but a court of equity looks beneath the surface. The bill alleges that they are fictitious and simulated, and this seems to be proved. It is not necessary to detail the transactions, but those set out in the bill seem to be substantially proved; that is to say, the defend--

Garrosi v. Garrosi.

ant Garrosi bought certain properties, either directly, or by lending money and afterwards buying them in one foreclosure, and then made them over, directly or indirectly, to the defendant Juana Maria Gonzalez for a recited valuable consideration. It does not appear that any money was paid to him by the said defendant Gonzalez, and the fact that he took a power of attorney from her to manage her property, and also a will by which the property is to come back to him, is very persuasive that the transactions were not real ones. The court accordingly finds in such cases that the title is in defendant Gonzalez as a mere depositary, or, to express it differently, that she holds the title for defendant Garrosi. It is more than a resulting trust for the purchase money, because no purchase money was intended. If a person puts the title of his property in the name of another, it is liable for his debts, and for all interests that others would have upon it if it were in his own name. In point of fact, the title is held by his codefendant in the eye of the law as his agent, no more and no less.

It is true that it is alleged the defendant Gonzalez nursed her codefendant through a serious illness, and this might, under some circumstances, constitute a valuable consideration. But the transactions in this case do not seem to be conveyances in grateful payment of such services; they leave an entirely different impression upon the mind. The proof of the value of these services is not set out, and the property must be held to be that of defendant Garrosi, and not defendant Gonzalez. The case is one, therefore, not so much of a fraudulent conveyance, or even a voluntary conveyance which may be attacked by subsequent creditors, as of property still belonging to the defend-

ant Garrosi and subject to all his obligations, contractual and legal.

So much as to the real property, Juanita, Luisa, Concepción, & Leonor, as to which the proof substantially supports the bill. The proof as to the money, however, is otherwise. The fact that the defendant, had money, such as gold, at one time by no means proves that he has it now, and no proof is introduced to overcome his sworn evidence that he has no such money.

11. Defendant Garrosi contends that whether these conveyances were valid or simulated makes no difference so far as regards this plaintiff, that she is not a creditor in the ordinary sense of the word, but can claim, if at all, only the rights which a wife is allowed under the civil law. This is true. Whether Garrosi kept the title of these plantations in himself directly, or in an agent for him, would be immaterial, unless some marital right of the plaintiff is affected. Under the Civil Code of Porto Rico, § 1314, property owned before marriage by either spouse remains his or her separate property.

"Sec. 1314. The following is the separate property of the spouses: 1. That brought to the marriage as his or her own. 2. That acquired by either of them during the marriage by titulo lucrativo, that is to say, by gift, devise or descent. 3. That acquired by right of redemption or by exchange for other property belonging to one of the spouses only. 4. That bought with money belonging exclusively to the wife or to the husband."

What Garrosi, therefore, owned before his marriage would be, under the law, his separate property. The wife is concerned only in the property of the conjugal partnership, which is defined in § 1316, P. R. Civ. Code, as follows: "To the conjugal partnership belong: 1. Property acquired for a valuable

consideration during the marriage at the expense of the partnership property, whether the acquisition is made for the partnership or for one of the spouses only. 2. That obtained by the industry, salaries, or work of the spouses or of either of them. 3. The fruits, income, or interest collected or accrued during the marriage, coming from the partnership property, or from that which belongs to either one of the spouses."

There are some other minor provisions on the subject, which are not important in this case. It is true that by § 1322 "all the property of the marriage shall be considered as partnership property until it is proven that it belongs exclusively to the husband or to the wife;" but the bill in this case and the evidence leave no doubt that the particular property attacked belonged to Garrosi before his marriage, and in such case it did not constitute property of the conjugal partnership, and therefore it is not liable to any claim on plaintiff's part for division. The husband is given the power of administration of conjugal property by § 1327, although he cannot sell the real estate without the express consent of the wife. Any act in violation of these provisions, or in fraud of the wife, is null. Civ. Code, § 1328.

The effect of the civil law, therefore, is that whatever either spouse owned before marriage remains his separate property, but whatever is the increase of that property above necessary expenses of maintenance and support of the family is to be considered as conjugal property and to be accounted for as such. It is probable that the plantations described in the bill have produced returns, it may be valuable returns. The parties hereto seem to have lived as if they had considerable means. It is therefore a proper conclusion that there is conjugal property of considerable amount; and the property should be either held in-

Garrosi v. Garrosi.

tact to await future investigation by the local court, or a reference should be ordered by this court to determine the amount of the partnership property liable to the claim of the plaintiff, and in what form it exists.

12. A serious question arises out of the fact that the defendant Garrosi seeks to show that the case in the local court, to which this case in the Federal court is ancillary, has been decided adversely to the plaintiff. Of course, if the main case falls, an ancillary proceeding must fall with it. There is the difficulty involved, that this alleged decision was made May 16, 1916, and thus after the submission of the case at bar. No evidence can be introduced in a case after its submission. So far as the parties are concerned, the submission ends the case, and the decree of the court will for most purposes relate back at least to the submission. The evidence in question is different from ordinary evidence in that it does not so much supply a link in the chain as, if valid, it strikes out the chain altogether. Nevertheless, it must now be held, as it was when it was offered, that the decree of the local Ponce court cannot be considered. It is not relevant under the issue in the case, and is not set up by any pleading. It could become competent, if at all, only by setting aside the submission and by such supplemental pleading as would afford the court a ground upon which to proceed. Offered as it was by a mere motion to add a certain paper to the evidence, it could not be entertained.

It may be added that it is questionable whether the local judgment could be considered at all until the time for appeal to the local supreme court had expired. The object of the case in the Federal court is to discover and preserve the property of the defendant Garrosi until the claim of the plaintiff can be

Garrosi v. Garrosi.

finally determined. It would be doing less than full justice to dismiss this case until a decree of the Porto Rican court of last resort had been obtained, or the time had expired within which such appeal could be applied for. On this ground also it seems that the evidence offered cannot at present be received.

13. The question of prescription can hardly be said to arise at this time. This is not so much a case of setting aside a conveyance to one creditor in fraud of others, as of establishing a trust in property conveyed to another for the grantor's secret use. It is obvious that the Statute of Limitations does not apply to something which is continuous. If defendant Gonzalez holds the property in question for the benefit of defendant Garrosi, and defendant Garrosi is receiving the proceeds, he is the owner now just as much as he was before the conveyance complained of. The conveyance may be disregarded and the property in question treated as the property of Garrosi. The Statute of Limitations in such case has not begun to run.

This defense is in its nature preliminary, but until the facts have been examined it could not be determined what statute applied, or when it began to run. Hence it is considered last of all.

A decree will therefore be entered in favor of the plaintiff in accordance with the foregoing opinion.

It is so ordered.