# GOTTLIEB *v.* THATCHER.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 192. Argued January 4, 5, 1894. — Decided January 15, 1894.

The proofs fail to establish that the transactions complained of by the appellant were fraudulent, as alleged.

The relationship of brothers does not of and in itself cast suspicion upon a transfer of property by one to the other, or create such a *prima facie* presumption against its validity as would require the court to hold it to be invalid without proof that there was fraud on the part of the grantor, participated in by the grantee.

A judgment being filed for record and recorded as required by the statutes of Colorado, a lien attaches at once upon the real estate of the judgment debtor.

The proviso in the Colorado statute concerning liens, suspending the running of the statute when issue of execution is restrained by injunction, applies to a suspension of issue by supersedeas on appeal.

IN EQUITY. Decree dismissing the bill, from which complainant appealed. The case is stated in the opinion.

*Mr. R. T. McNeal,* (with whom was *Mr. E. G. Wells* on the brief,) for appellant.

*Mr. J. Warner Mills,* (with whom was *Mr. Henry C. Dillon* on the brief,) for appellee.

MR. JUSTICE JACKSON delivered the opinion of the court.

This suit was brought by the appellant, who was the complainant below, against the appellee to set aside conveyances made to him by Samuel H. Thatcher, and the sheriff of Arapahoe County, in the Territory of Colorado, of certain lots and parcels of land, lying and being in that county, and in the eastern division of the city of Denver, on the ground that the lands were conveyed, and caused to be conveyed, to the appellee for the purpose of hindering, delaying, and defrauding the complainant, and other creditors of Samuel H. Thatcher.

The case made by the pleadings and proofs, so far as need be noticed, is this: On May 7, 1874, one Samuel Kaucher recovered a judgment in the District Court of Arapahoe County, Colorado, against Samuel H. Thatcher for $2710.40. A certified copy or abstract of this judgment was duly filed for record, and was recorded in the office of the clerk and recorder of the county on June 18, 1874. From this judgment Thatcher prosecuted a writ of error to the Supreme Court of the Territory, and executed a supersedeas bond, with sureties, in the sum of $3500. That judgment was affirmed by the Supreme Court of the Territory. Thereupon Thatcher

prosecuted a writ of error to the Supreme Court of the United States, and, as appears from the record of the case in this court, executed a supersedeas bond with sureties, which suspended the execution of the judgment of the court below. It is shown that the sureties on the supersedeas bond or bonds were protected by securities placed in their hands by Thatcher. The case was heard in this court at the October term, 1877, and on December 17, 1877, the judgment of the Territorial Supreme Court was affirmed, and a mandate issued for the execution of the judgment. On January 29, 1878, execution issued on this judgment against Thatcher, and was levied upon the lands in controversy in the present case, as the property of the defendant, and pursuant to that levy the premises were sold by the sheriff of Arapahoe County, and were purchased by the appellee, Lewis C. Thatcher, for the debt and interest, amounting to about $3850. A certificate of purchase was given to the appellee, and thereafter, on November 25, 1878, a sheriff's deed was made to him for the premises.

Prior to the affirmance of the Kaucher judgment in this court, Samuel H. Thatcher, by warranty deed dated November 13, 1876, conveyed the premises in question to his brother, Lewis C. Thatcher, who was then a resident of the city of St. Louis, Missouri, the consideration for the conveyance being the sum of $4000, for which the grantee executed to the grantor his two notes for $2000 each, payable two and three years from date of the sale. The deed was duly recorded November 18, 1876, in the register's office of the county.

On November 18, 1875, the complainant loaned to Zella Glenmore the sum of $2700 for one year, with interest at the rate of five per cent per month, payable monthly, for which she executed a note with Samuel H. Thatcher as her surety. This note was secured by a chattel-mortgage on the household furniture of Zella Glenmore, worth from five to six thousand dollars, and by a deed of trust executed by Samuel H. Thatcher on 320 acres of land in Douglas County, Colorado, of the value of about $3000. The interest on this note appears to have been paid, except a portion of the last month of the year during which the note had to run. At the maturity of the note

the complainant seized the furniture covered by the chattel mortgage executed by Zella Glenmore, for default in payment, and caused the same to be sold at auction, realizing therefrom the net proceeds of $1519.43, which were applied upon the note. The complainant on November 30, 1876, also caused the Douglas County lands owned by Thatcher to be advertised and sold under the deed of trust, and the same were bid in by the appellant for $320, and on December 27, 1877, he received a deed from the trustee conveying to him the lands thus sold.

On November 25, 1876, the complainant commenced an action in attachment against Thatcher and Zella Glenmore on the note, and on July 23, 1877, he obtained judgment against Thatcher for the sum of $2170. The ground of this attachment was that Samuel H. Thatcher had disposed of his property to defraud his creditors. The attachment was levied upon the same property covered by the conveyance of November 13, 1876, to the appellee, and, after recovery of judgment in the attachment proceedings, it was sold under special execution and bid in by the appellant for the sum of $1800, of which sum $1694.10 was paid over to or applied on the complainant's debt. Thereafter, on July 19, 1878, a sheriff's deed was duly executed to complainant for the premises thus sold.

The complainant alleges in his bill that at the time Samuel H. Thatcher conveyed the premises to his brother, Lewis C. Thatcher, he was insolvent; that said conveyance was made for the purpose of hindering, delaying, and defrauding his creditors, and that it was without consideration, and therefore void as against the complainant.

He further alleges that the purchase made of the property in the name of Lewis C. Thatcher, under the Kaucher execution in January, 1878, was collusive and fraudulent as between Samuel H. and Lewis C. Thatcher; that the $3850 paid to the sheriff at that sale, and in satisfaction of the judgment, was the money of Samuel H. Thatcher; and that the conveyance made by the sheriff to Lewis C. Thatcher was a part of the fraudulent scheme on the part of Samuel H. Thatcher

to hinder, delay and defraud the complainant in the collection of his debt.

The answer denies all of these allegations of fraud, and states that the purchase of the property by Lewis C. from his brother was in good faith, without any knowledge or notice on the part of the appellee that any fraud was intended; that the consideration was a fair and reasonable one for the property, and that it was duly paid; and that the notes executed for the purchase money were paid and were taken up by him. The answer also alleges that the defendant furnished the money with which to purchase the property when sold under execution issued in the Kaucher judgment.

Upon these questions testimony was taken on both sides. Among other proofs introduced the complainant examined the appellee in his own behalf, or as his own witness, touching the transactions and conveyances called in question. In this examination, as a witness for the complainant, the appellee stated that the purchase was made without notice of any fraud on the part of his brother; that the negotiation leading to the purchase was made partly through an attorney, (H. R. Hunt,) and that the notes given for the consideration had been duly paid by him; that in purchasing the property from his brother it was to be free and clear from all incumbrances, and the deeds contained such warranty; that he knew of the existence of the Kaucher judgment before making the purchase and taking the conveyance; that he was advised that that judgment, if affirmed, would not be a lien upon the property, but it was understood and agreed between his brother and himself that if the judgment should be affirmed, and thereby become a lien on the property, then some provision should be made for his protection against the lien. The question of the lien of that judgment, in case of its affirmance in the appellate courts, was a matter upon which there was a difference of opinion, and the appellee testifies that in view of that uncertainty he forwarded money to his brother from time to time, while the Kaucher suit was pending, for the purpose of having it in readiness to meet the judgment, if it was a lien, and in the event it was not a lien upon

the property, the money could be used for the payment of the two notes which Samuel H. Thatcher held against the appellee for the original purchase money of the property.

When the Kaucher judgment was affirmed, and the execution issued thereunder was levied upon the property, the appellee directed that it be purchased in his name and for his account, and the money which he had from time to time placed in the hands of his brother for that purpose, amounting to about $4000, was applied in that way, to the extent of $3850, and credited on his notes — the first one being surrendered by his brother, and the second, which had been transferred by Samuel H. Thatcher to A. Jacobs & Company, on which a partial payment had been credited, was taken up and paid by the appellee.

It was clearly stated by the appellee that the money he placed in the hands of his brother, Samuel H. Thatcher, to be used to satisfy the Kaucher judgment, or to purchase the property sold under the execution of that judgment, was to be endorsed on the appellee's notes executed for the price of land, if the funds were required to be and were so used.

It is further shown by the deputy sheriff who levied upon and sold the lands in controversy, under the Kaucher judgment, that Samuel H. Thatcher informed him, before the sale under the execution took place, that his brother, the appellee, would buy the property, and that Samuel H. Thatcher would bid for the property for and in the name of his brother.

There is no testimony going to show that the value of the property at the time of its purchase in November, 1876, exceeded to any great extent the sum of $4000. There was testimony taken to show that six or eight years later the value exceeded $4000, but that during that period, prices of real estate in and around Denver had greatly advanced. It does not appear, therefore, that there was any gross inadequacy in the price of the property.

It further appears that the appellee took possession of the property, through his agents, soon after its purchase, and continuously thereafter paid taxes on the same.

The allegation of insolvency on the part of Samuel H.

Thatcher at the time of the conveyance of the property to his brother is not established by the proofs. The only indebtedness of Samuel H. (aside from that of the complainant's and of the Kaucher judgments) which is shown to have been in existence in November, 1876, was a note for the sum of $1000, with a small amount of interest thereon, which he owed to Gray & Eicholtz, of Denver, amounting in all to about $1015. This indebtedness was protected by a note of $1350, made by Anna C. McCormick, secured by a deed of trust upon twenty acres of valuable land owned by her, and lying near the city of Denver. On his indebtedness to Gray & Eicholtz, Samuel H. Thatcher, on November 15, 1876, paid the sum of $1000, leaving but $15 due. Subject to that balance of $15 this note for $1350, owned by Samuel H. Thatcher, was attached by the complainant under the attachment proceedings above referred to, and was sold thereunder to the complainant for the sum of $80, who, after paying Gray & Eicholtz the balance of $15, enforced the deed of trust covering the twenty acres of land which secured the note, and, under the trustee's sale, purchased the same on January 10, 1879, for $1600.

The appellant credited Samuel H. Thatcher in this transaction with only the sum of $80, which he bid for the note of Anna C. McCormick, and it is exceedingly doubtful whether the proceeding to subject this note was sufficiently valid to have divested Samuel H. Thatcher of his title thereto, or to confer a title on the complainant, who credited the indebtedness of Samuel H. Thatcher with only the sum of $80. It admits of a very grave question whether the complainant should not have credited Samuel H. Thatcher with the sum of $1600, for which the land securing the note was sold. If the complainant is chargeable with that amount, and with the sum of $1694.10 for which the property in controversy was sold under his execution sale, then the judgment of $2170 has been more than satisfied, so that he would have no equity in this case. But, without going into that question, it is shown that every debt that Samuel H. Thatcher owed at the time of the conveyance of the property to his brother in November, 1876, was well secured. The complainant's debt of $2700, for

which Samuel H. Thatcher was security, was secured by property reasonably worth $8000, while the debt to Kaucher, for about the same amount, was secured by collaterals placed in the hands of the sureties on the supersedeas bonds; and the remaining debt to Gray & Eicholtz of $1015 was protected by ample collateral in the shape of the Anna C. McCormick note of $1350, bearing interest at the rate of twenty per cent per annum, (which was lawful under the laws of the Territory of Colorado,) secured by a deed of trust on twenty acres of valuable land, which at the trustee's sale the complainant bid in for $1600.

The appellant claims as a badge of fraud that on January 11, 1878, Lewis C. Thatcher, appointed his brother, Samuel H. Thatcher, his attorney in fact. This instrument was duly recorded January 29, 1878, and empowered Samuel H. to bargain, sell, convey, or exchange for other lands and property all his (Lewis C. Thatcher's) lands in the State of Colorado, and to execute all deeds or other instruments in writing therefor; and also to purchase and acquire by exchange other lands in that State — such other lands to be acquired in the name of Lewis C. Thatcher, and the title to be vested in him.

The proofs establish that Lewis C. Thatcher held other lands in the State of Colorado to which this power of attorney had application, as well as to the lands described in the deed of November 13, 1876, from Samuel H. Thatcher to his brother, the appellee. There is nothing in the fact of the execution of this power of attorney, or in its provisions, to raise any presumption of fraud in the original purchase.

The only proof introduced by the complainant tending in the slightest degree to contradict the testimony of the appellee was a loose conversation held between the appellant and the appellee in February, 1879. This conversation, as stated by the appellant in his testimony, in no way tends to establish fraud in connection with the conveyance of November 13, 1876, as alleged in the bill, and besides it is positively contradicted by the appellee. The statements made by Samuel H. Thatcher in 1878 to his sureties on the supersedeas bonds,

and to the deputy sheriff of Arapahoe County, tending to show that he entertained a strong dislike for the appellant, and was disposed to obstruct the collection of his judgment, are not sufficient to show fraud, even on the part of Samuel H. Thatcher, but having been made in the absence of Lewis C. Thatcher, and long after the date of the conveyance, they were clearly incompetent as against the appellee.

It is claimed for the appellee that as the appellant called and examined him as a witness touching the conveyance of. November, 1876, and the consideration therefor, and of the payment of that consideration, he thereby represented him as worthy of belief, and cannot impeach or impugn his credit or his general character for truth under the authorities. 1 Greenleaf, § 442; *Jones* v. *People*, 2 Colorado, 351, 356. Without going into the question as to how far, or to what extent, if any, the appellant was concluded from impeaching the credit of the appellee, after having introduced and examined him as a witness touching the matters in question, it is sufficient to say, in this case, that the testimony of the appellee has not been contradicted in any substantial or material respect, and, treating it as worthy of belief and uncontradicted by any independent proof, it establishes that the purchase from his brother of the lands in question was free from fraud. The testimony taken as a whole falls far short of establishing the allegation of the bill that the conveyance of November 13, 1876, was made for the purpose of hindering, delaying, or defrauding the complainant or the creditors of the grantor.

The relationship of the parties does not, of and in itself, cast suspicion upon the transaction, or create such a *prima facie* presumption against its validity as would require the court to hold it to be invalid without proof that there was fraud on the part of the grantor, participated in by the grantee. This proposition is so well settled that authorities need not be cited in its support.

But, again, the statute of Colorado on the subject of liens (1862) in force at the time of these transactions provided that judgments should be a lien on the judgment creditor's real estate, not exempt from execution, owned by him at the time,

until the lien expires; and "the lien shall continue for six years from the entry of the judgment, unless the judgment shall be previously satisfied: *Provided*, that execution be issued at any time within one year on such judgment; and from and after the said six years the same shall cease to be a lien on any real estate as against *bona fide* purchasers, or subsequent incumbrances by mortgage, judgment, or otherwise: *Provided*, that in case the party in whose favor any such judgment shall have been entered shall be restrained by injunction out of chancery or order of any judge or court, either from issuing execution or selling thereon, the time which he shall be so restrained shall not be deemed or considered as any part of the said six years." Gen. Laws Col. 1877, 523, 524, c. 53, § 1.

By the first section of the act of February 13, 1874, it is provided that "When a judgment shall be rendered in any District or Probate Court of this Territory, the clerk of such District Court, or the probate judge, shall, upon demand, give to the plaintiff, his agent or attorney, an abstract thereof, setting forth the name or names of plaintiff or plaintiffs, and defendant or defendants, in full, the title of the court, the date when the judgment was rendered, and the amount of the same, with damages and costs, which shall be signed by such clerk or probate judge, and attested by the seal of the court; and when so executed, such abstract may be filed for record in the office of the clerk and recorder of the county where such judgment is rendered, or in any county in the Territory, and from the date of such filing, and not before, such judgment shall become a lien upon all the real estate of defendant in the county where such abstract may be recorded, and not until such abstract shall be so filed, nor in any county other than the one in which so filed." Laws Colorado, 1874, p. 168.

The Kaucher judgment having been filed for record, and having been recorded, as required by this section, the lien upon the real estate of Samuel H. Thatcher, in controversy in this suit, attached at once, as held in *McFarran v. Knox*, 5 Colorado, 217, 220.

But the execution was not issued within a year from the rendition of the judgment, for the reason that it was superseded

by the order of the District Court and of the Supreme Court, by the allowance of the supersedeas bonds, which suspended all proceedings under the judgment. This suspension of the proceedings comes fairly within the proviso of the act of 1862, above quoted, and the execution, after the affirmance of the Kaucher judgment by this court, having been issued within a year from the date of its affirmance and within six years from the date of the judgment, gives the lien of that judgment priority over the complainant's attachment and judgment, so that the sale made under the Kaucher execution conveyed a superior title to that which the complainant acquired either by his attachment or by his execution, levy, and sale.

It is clearly established, as we think, that Lewis C. Thatcher furnished the money to pay off the Kaucher judgment, or to purchase the property sold under the execution issued thereon; that Samuel H. Thatcher acted only as his agent in making the purchase, and in paying over the money to the sheriff; and that the sheriff of Arapahoe County was so informed before that execution sale was made. Under these circumstances, and in the absence of any fraudulent collusion on the part of Samuel H. Thatcher and Lewis C. Thatcher in the transaction, we think that Lewis C. acquired a title to the property superior to that which complainant acquired under his attachment and execution sale; and that the complainant cannot, even as an unsatisfied creditor of Samuel H. Thatcher, successfully attack this purchase of Lewis C. Thatcher on the ground of fraud or of bad faith on the part of the appellee.

Now, without going into the equitable considerations set up in the second amended answer, which induced the court below to consider that the complainant could not enforce his judgment against the appellee, 34 Fed. Rep. 435, we are satisfied that the proofs fail to establish that the transactions by which Lewis C. acquired the property in controversy were fraudulent as alleged, and that the complainant is not entitled to have the conveyances made to the appellee, either by Samuel H. Thatcher or by the sheriff of Arapahoe County, set aside.

The judgment of the court below is, therefore,

*Affirmed.*