**FRANKLIN BANK, N. A., a national bank association, and NBD Equipment Finance Inc., Petitioners,**

v.

**Bruce T. BOWLING and Elizabeth H. Bowling, Respondents.**

No. 02SC524.

Supreme Court of Colorado, En Banc.

June 23, 2003.

As Modified on Denial of Rehearing Aug. 4, 2003.

Otto, Porterfield & Post, LLC, Wendell B. Porterfield, Jr., Vail, Colorado, Attorneys for Petitioners.

Bailey & Peterson, P.C., James S. Bailey, Jr., Randall M. Livingston, Denver, Colorado, Attorneys for Respondents.

Justice KOURLIS delivered the Opinion of the Court.

In this case, Bruce T. and Elizabeth H. Bowling purchased a condominium unit and parking space in Eagle County from Patrice Merritt. The Bowlings obtained a title insurance commitment, which did not refer to any judgment liens encumbering the property. Several months after that transaction, Franklin Bank, N.A. and NBD Equipment Finance, Inc. (Creditors), sought to execute against the property, based upon judgment liens filed prior to the sale against "Grady Merritt," husband of Patrice Merritt, and a signatory on the deed of trust encumbering the property. The Bowlings brought this action to enjoin the execution sale and for a declaratory judgment that the judgment liens were not valid against their property. The trial court granted summary judgment in favor of the Bowlings, finding that the Bowlings' property was not subject to the judgment creditors' lien, because the name on the property was "T. Grady Merritt" and the name on the liens was "Grady Merritt." Creditors appealed to the court of appeals, which upheld the trial court's order. *Bowling v. Franklin Bank, N.A.*, No. 01CA1346, 2002 WL 31053324 (Colo.App. May 30, 2002) (not selected for official publication).[1]

We accepted certiorari on two issues [2] relating to the effect of the judgment liens. The operative question is whether recorded transcripts of judgment identifying the judgment debtor as "Grady Merritt" created liens against real property titled in the name of "T. Grady Merritt." We now hold that when an individual uses a first initial and a full middle name, there is a presumption that he may transact business under the middle name rather than the first name. Accordingly, the title examiner, was on constructive

notice of judgment liens filed against "Grady Merritt" even though the examiner was searching for recordings against "T. Grady Merritt." We therefore reverse the trial court's entry of summary judgment and injunction, and remand with directions to the trial court for proceedings consistent with this opinion.

## I. Facts

In March of 1996, T. Grady Merritt and Patrice Merritt purchased a condominium unit and associated parking space in Eagle County from David M. Zinn and Marilyn Zinn, evidenced by a general warranty deed. The Merritts executed a deed of trust encumbering the property to a third party.[3]

Creditors each obtained a judgment[4] against "Grady Merritt" in Michigan, filed their judgment in Colorado pursuant to the proper procedures, and recorded it with the clerk and recorder of Eagle County on March 12, 1999. It is uncontested that "T. Grady Merritt" and "Grady Merritt" are the same person. As a part of the process, Creditors notified Merritt of the filing of the judgment in Colorado.

On May 13, 1999, T. Grady Merritt conveyed his share of the property to his wife Patrice for nominal consideration, by executing a quitclaim deed. Thereafter, Patrice Merritt sold the property to the Bowlings by general warranty deed dated December 3, 1999, which deed was duly recorded. As a part of the contract for sale, Patrice caused a commitment for title insurance for the property to be furnished to the Bowlings.

Land Title Guarantee Company issued a commitment for insurance of title prior to closing, on November 1, 1999. Land Title required the release of the deed of trust in

---

1. Judge Casebolt dissented, holding that the Creditors did have valid liens.

2. 1) Did transcripts of judgment recorded pursuant to C.R.S. Section 13–52–102(1) identifying the judgment debtor as "Grady Merritt" create liens against real property titled in the name "T. Grady Merritt?"
 2) Did the recording of transcripts of judgment identifying the judgment debtor as "Grady Merritt" put a subsequent purchaser of real property from a successor to "T. Grady Merritt" on con-

structive or inquiry notice of liens claimed by virtue of C.R.S. Section 13–52–102(1)?

3. All transactions were recorded in Eagle County, Colorado.

4. Creditors Franklin Bank N.A. and NBD Equipment Finance, Inc. recorded judgments for $45,810.06 and $38,361.83, respectively, for a combined total of $84,171.89. Both creditors also seek statutory interest.

the names of both "T. Grady Merritt" and "Patrice Merritt," but did not make any reference to the transcripts of judgment as liens against the property. Land Title later insured the title without excepting the judgment liens.

After closing, Creditors attempted to execute on and sell their interest in the property. The Bowlings filed a complaint and a motion for preliminary injunction to enjoin the sale, claiming that the judgment did not attach to their property because they had no notice of the judgment lien recorded against "Grady Merritt." The Bowlings subsequently filed a motion for summary judgment, noting that neither party disputed the operative facts. Creditors opposed Bowlings motion, but filed a cross-motion for summary judgment. Essentially, both parties agreed that the dispositive question of law was "whether recording a transcript of judgment with the judgment debtor named 'Grady Merritt' provides constructive notice of the judgment to purchasers of property that was once owned in the name of 'T. Grady Merritt.'"

The trial court observed that both parties had made mistakes—Creditors by failing to ascertain all correct legal names of the debtor/grantor, and the Bowlings, through Land Title, by failing to search the index for the name "Grady Merritt." The court determined that the title company had no duty to search the index for the grantor's middle name.

Creditors appealed and the court of appeals affirmed, holding that the Bowlings had no notice of Creditors' judgments because "T. Grady Merritt" is a materially different name than "Grady Merritt" and any judgments recorded against "Grady Merritt" were consequently outside the chain of title. Further, the court found that no irregularity occurred in the chain of title that would persuade it to charge the Bowlings with inquiry notice, rejecting Creditors' argument that the presence of a quitclaim deed and the

absence of consideration raised a duty to inquire. Creditors sought, and we accepted, certiorari.

To summarize, then, the current parties to this action are the Bowlings, who had no actual knowledge of the judgment liens, and who obtained title insurance on the property that represented the title to be free and clear of any such liens.[5] On the other side are the Creditors, who have a valid judgment against Grady Merritt, which would presumably have been paid at closing out of the proceeds of the sale if the title insurance company had located it. So, simply stated, does the law impose upon the purchasers, through Land Title, the burden of locating Creditors' judgment liens despite the difference between the name "T. Grady Merritt," which appeared in the chain of title to the real property, and "Grady Merritt?"[6]

To answer that question, we must determine whether Creditors' filings in the Eagle County records gave notice to the Bowlings' title examiner of the existence of the liens.

## II. Standard of Review

 Both parties in this case moved for summary judgment. The trial court granted the Bowlings motion, and entered an injunction against the enforcement of the liens against the Bowlings property. We review an order granting summary judgment de novo. *Vail/Arrowhead, Inc. v. Dist. Ct.*, 954 P.2d 608, 611 (Colo.1998); *see also Joe Dickerson Assocs. v. Dittmar*, 34 P.3d 995, 1003 (Colo.2001) (holding that an appellate court reviews a trial court's granting of a summary judgment motion de novo because it is a question of law). Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue as to any material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002).

---

5. As counsel agreed during oral argument, the Bowlings have recourse to Land Title to protect them against any rights of Creditors that we may here conclude should attach.

6. What we do not have before us in this case is the issue of the culpability of Merritt himself, who executed a quitclaim deed to his wife after he learned of the judgment liens and who bears ultimate responsibility for the judgment lien.

## III. Judgment Liens

The conveyancing and recording statutes, sections 38–35–101 to 126, 10 C.R.S. (2002), provide that documents encumbering or affecting title to real property may be recorded in the office of the clerk and recorder of the county where the property is located. Once filed, such recorded documents operate as record notice of the interest or encumbrance described. The purpose of the statute, quite clearly, is to provide notice to prospective purchasers of encumbrances on title, and to protect certainty and marketability of title to real property, such that only recorded instruments will be honored.[7] "[T]he prime purpose of the recording acts is to give subsequent purchasers information regarding the title of the property that they propose to acquire." 14 Richard R. Powell, Powell on Real Property § 82.03[2][b][ii] (Michael Allan Wolf ed., 2003).

When a creditor obtains a money judgment against a debtor in a court of law, the clerk of the court enters it on the register of actions. C.R.C.P. 58. The judgment creditor may then serve written interrogatories upon the debtor seeking information about all property owned by the debtor, and if the debtor does not answer, may even subpoena the debtor to court to answer the questions before the court. C.R.C.P. 69.

■ The creditor may take a transcript of the docket entry of any judgment and record it in the clerk and recorder's office of a county where real property owned by the debtor is located. § 38–35–109(1).[8] The transcript will not contain a legal description of real property owned by the debtor, but will rather contain only the names of the creditor, debtor and the amount of the judgment. Creditors who obtain judgments against debtors have a time-honored right to enforce those judgments against the real and personal property of the debtor. When a judgment is filed and recorded, a lien attaches immedi-

ately to the real estate of the judgment debtor. *Gottlieb v. Thatcher*, 151 U.S. 271, 14 S.Ct. 319, 38 L.Ed. 157 (1894); *Sky Harbor, Inc. v. Jenner*, 164 Colo. 470, 435 P.2d 894 (Colo.1968). In Colorado, the General Assembly has provided that when a creditor records a judgment against a judgment debtor, the judgment becomes a lien "upon all the real estate, not exempt from execution in the county where such transcript of judgment is recorded, owned by such judgment debtor or which such judgment debtor may afterwards acquire in such county, until such lien expires." § 13–52–102.[9]

Judgment liens are recorded under the grantor-grantee and grantee-grantor indices. Section 30–10–408(2)(b), 9 C.R.S. (2002) requires that "[t]he clerk and recorder shall make correct entries in the grantee index of every document filed or recorded, as required by law, concerning or affecting real estate under the appropriate heading, entering the names of the grantees in alphabetical order." Thus, the judgment lien here would have appeared in the indices both under the Creditors' names and under "Merritt, Grady."

The scope of a search of real property records should include a search of the direct and inverted indices of recorded documents maintained by the clerk and recorder. Those indices should be searched "as to each person who has held or holds title to an interest in any portion of the subject property" during prescribed periods. Attorneys Title Guar. Fund, Inc., Colorado Real Estate Title Standards 1.1.3 (1997). The search period for liens is as set out in section 13–52–102 and clearly would include March of 1999 when these liens were recorded.

The parties do not dispute that the judgment was valid in the state against which it entered, and was properly authenticated. They also do not dispute that the title exam-

---

7. Unless the purchaser has actual knowledge of an unrecorded instrument. § 38–35–109(1).

8. Creditors had a judgment obtained in another state, and domesticated it pursuant to section 13–53–103, 5 C.R.S. (2002), such that it had the force of a judgment obtained in a court in Colorado.

9. Colorado has statutes and a rule creating procedures and penalties related to purportedly false or invalid liens specifically because a judgment lien creates a cloud on title to real and personal property that impacts the owner of that property. §§ 38–35–109(3), 201; C.R.C.P. 105.1.

iner had the responsibility to search for liens under the names of "T. Grady Merritt" or "Patrice Merritt." Accordingly, they do not dispute that if the judgment lien had contained the name "T. Grady Merritt" as well as or in addition to "Grady Merritt," it would have attached to the condominium and parking space upon recording; would have given rise to the right of Creditors to execute upon the condominium and parking space;[10] and would have shown up as an exception to title on the title insurance policy.

### IV. Notice: Actual, Constructive, or Inquiry

■ We recognize three forms of notice, by which a party shall be charged with knowledge of the rights of another: actual notice, constructive notice, and inquiry notice.[11] Actual notice occurs simply when one has actual knowledge of another's claim. However, constructive and inquiry notice operate to impute knowledge to a party under certain specific conditions.

■ Constructive notice is, for all practical purposes, record notice. When a party properly records his interest in property with the appropriate clerk and recorder, he constructively notifies "all the world" as to his claim. The recording acts operate to alert all future grantees as to the rights of the recorder, as the law assumes such grantee will search the index and discover the claim.

■ Inquiry notice arises when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another. By operation of law, the party will be charged with all knowledge that a reasonable investigation would have revealed.

■ In this case, it is undisputed that the Bowlings had no actual knowledge of the judgment liens. Creditors make two arguments that would, nonetheless, charge the Bowlings with notice of the liens. First, they argue that the difference between "T. Grady Merritt" and "Grady Merritt" was not so significant as to defeat the constructive notice of the liens provided by recording. Alternatively, they argue that the transaction between T. Grady Merritt and Patrice Merritt by quitclaim deed should have raised a suspicion about some intervening circumstance, such as a judgment, and thereby triggered a duty of inquiry that would have led to a discovery of the liens.[12]

■ When a judgment lien is properly recorded, it "become[s] a lien upon all the real estate, not exempt from execution in the county where such transcript of judgment is recorded, owned by such judgment debtor or which such judgment debtor may afterwards acquire in such county, until such lien expires." § 13–52–102(1); *Mortgage Invs. Corp. v. Battle Mountain Corp.*, No. 02SC102, slip op. at 21, 70 P.3d 1176, 1185, 2003 WL 21057571 (Colo. May 12, 2003). Accordingly, a subsequent purchaser of property owned by that judgment debtor has record notice of the lien.

■ Furthermore, so long as "a prior instrument is properly recorded, subsequent purchasers have an obligation to find it on the record and are considered to have constructive notice of it, even if they do not locate it." 14 Richard R. Powell, Powell on Real Property 82.03[2][b][ii] (Michael Allan

---

10. A judgment creditor may levy upon real property owned by the debtor by way of a writ of execution. *See* §§ 13–52–101 to 111; C.R.C.P. 102.

11. We recognize that traditionally, inquiry notice has been considered merely a form of constructive notice. We find this construction cumbersome and misleading, as inquiry notice is sufficiently distinct from constructive notice to merit separate consideration. Unlike constructive notice, inquiry notice depends on extrinsic factual inquiry. For these purposes, we limit constructive notice to notice imputed solely through operation of the recording acts.

12. We disagree. The fact that T. Grady Merritt, a joint tenant, conveyed his interest to his wife, the other joint tenant, by way of a quitclaim deed does not constitute a transaction that, in and of itself, gives rise to a duty of further inquiry. There was a time when the use of a quitclaim deed may have triggered a duty of inquiry; however, that presumption is no longer favored. *See* 14 Richard R. Powell, Powell on Real Property 82.02[1][d][iii][B]; *Bradford v. Carpenter*, 13 Colo. 30, 21 P. 908 (Colo.1889)(finding that use of a quitclaim deed coupled with other circumstances put purchaser on inquiry notice).

Wolf ed., 2003). A transcript of judgment is a prior instrument; thus, a properly recorded judgment lien burdens the property, and serves as notice to all subsequent purchasers.

■ To be valid, a judgment must be filed "under the 'proper' name of a party or under a name so similar or so frequently used as a substitute that due notice is given." 5 Richard R. Powell, Powell on Real Property 38.04[3] (Michael Allan Wolf ed., 2002). "Slight deviations are generally held to be immaterial," *id.*, as "substantial identity in given names is all that is necessary." R.G. Patton, *Priorities, Recording, Registration, in* IV American Law of Property § 17.18 n. 7 (A. James Casner ed., 1952).

■ When a title examiner conducts his search of the record, and discovers a judgment recorded against a grantor in the chain of title, he automatically receives constructive notice of the creditor's claim. Constructive notice carries the same consequences as actual notice. Notice may not be avoided "by variations in names provided they are so spelled as to be in that part of the index which a purchaser is under obligation to examine and in such form as to place him upon inquiry as to identity." Carroll G. Patton & R.G. Patton, *Examination of Title, in,* IV American Law of Property § 18.31.

■ Creditors did not file the transcript of judgment in this action against "T. Grady Merritt," the name that appeared on the deed of trust in the chain of title to the property. We conclude that the deviation was insufficient to defeat constructive notice.

## V. Variations in Name

Historically, individuals were known by one name only. *German Nat'l Bank v. Nat'l State Bank,* 3 Colo.App. 17, 19, 31 P. 122, 122 (1892) ("surnames were almost unknown in Europe and in England until the Norman conquest"). This court has held that a person's middle name was not a legally material part of the name. *Nelson v. Dist. Ct.,* 136 Colo. 467, 320 P.2d 959 (Colo.1957) (trial court refused to invalidate service of process merely because middle initial may have been erroneous). Earlier, in an ejectment case,

absent proof presented by the defendant, we refused to presume that an individual identified solely by his surname and beginning initials (F.M.McCracken) was "one and the same person" as an individual identified by his given and surname (Frank McCracken), in the absence of any evidentiary support. *McCracken v. Citizens' Nat'l Bank,* 80 Colo. 164, 249 P. 652 (Colo.1926).

The myriad possible formulations of a person's name have always bedeviled the courts' efforts to apply the recording acts. Nicknames, abbreviations, title or legacy designations, and chance omissions of the first or middle initial provide numerous accurate identifications. Names may be misspelled, and many names have numerous possible spellings. Further, many names are *idem sonans,* which are spelled differently but sound alike, such that the doctrine of *idem sonans* evolved to regard the two as the same.

In our modern society, numerous other factors confuse the process of accurately identifying individuals by name. People may adopt a popular name but alter the traditional spelling. Many wedded couples choose to retain their individual surnames or hyphenate their names, rather than assimilate under a family name. Some Americans embrace their cultural roots by retaining ancestral names beyond the first generation and outside the paternal chain, such that they have four or more names, each fundamental to their identity. Important in this case, sometimes individuals choose to identify themselves by a middle name rather than their first name, perhaps to avoid confusion when their given name is a legacy or perhaps just because of a preference for the middle name.

We have a curative statute in Colorado which provides that when two instruments affecting title to the same real property have been of record for three years, one of which uses the full first name and the other only the initial letter of the first name, or one uses a full middle name and the other only the initial letter of the middle name, there is nonetheless a presumption that it is the same

person. § 38–35–116, 10 C.R.S. (2002).[13] The Bowlings cite the statute as support for their argument that the difference between a full first name and initial is presumed to be material; to the contrary, we view the statute as supporting a conclusion that when an individual uses a first initial, his middle name is deemed to be material in identifying him. Next, when an initial, such as "T." appears in place of a full first name, the examiner should assume that the individual may not use his first name, and the middle name comes to carry more import. In this case, the fact that Merritt did not use his first name, but rather used an initial only, should have led the examiner to examine the record for encumbrances in the name of "Grady Merritt."

One treatise proposes that a title search for liens should include *idem sonans*, abbreviations, derivatives and initials:

> Where the name in the claim of lien differs from that of the record owner, it nevertheless may be effective to create inquiry-notice even though the discrepancy is sufficient to destroy its evidentiary value as creating a presumption of identity. Although there is no constructive notice of a claim against a party designated by a name materially different from that in which he holds title of record, the courts have been liberal in construing that considerable departures in the name of the lienee from that of the record owner are effective in placing a purchaser on inquiry.... [J]udgment searches or other searches of indices should include not merely the name under which a title is held, but also surnames which commence with the same letter and are *idem sonans*, as well as abbreviations, derivatives, and initials of the given name.

Carroll G. Patton & R.G. Patton, *Examination of Title, in,* IV American Law of Property § 18.76 (A. James Casner ed., 1952) (footnotes omitted).

We need not go that far in this case. Rather, we hold merely that when an individual uses an initial rather than a first name, his middle name carries more import.

We believe such a construction is consistent with the intent of the Conveyancing and Recording Act and with the specific provisions regarding enforceability of liens. Indeed, interestingly, our statutes presuppose that title examiners will come across judgment liens that contain variations in names, and the statutes impose detailed obligations upon the examiners when they do. Specifically, a title insurance company that believes there is a judgment lien affecting title to real property has a

> duty to make a bona fide good faith effort ... to determine whether the person against whom the judgment was obtained is the same person as the person who holds an interest in the real property which is the subject of the (lien). If a bona fide good faith effort is made and such effort fails to disclose satisfactory information ... then, in that event, the person or title insurance company ... may require the person who holds an interest in the real property which is the subject of the representation to provide satisfactory evidence or information that he is not the same person as the judgment debtor.

§ 13–52–102(4)(a), 5 C.R.S. (2002). A "bona fide good faith effort" is defined as including but not limited to "an examination of the judgment debtor's social security number, his driver's license, his address, his birth record, and the court record in the action which resulted in the judgment lien, if available." § 13–52–102(4)(c).

In this case, we now determine that, based upon the undisputed facts of this case,[14] the judgment liens filed against "Grady Merritt" served, by statute, to give constructive notice to anyone searching the real property records under the name of "T. Grady Merritt." The title insurance policy insuring title free and clear of those liens was, therefore, in error.

---

**13.** The legislature has recently revised this statute; however, it remains, for our purposes, substantively the same.

**14.** In this case, there were cross motions for summary judgment, and stipulated facts.

## VI. Conclusion

Accordingly, we reverse the summary judgment and injunction entered by the trial court, and remand the case to the trial court with instructions to grant Creditors' cross-motion for summary judgment and to conduct further proceedings consistent with this opinion.