25CA0289 Bernhardt v Thompson 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0289
Gilpin County District Court No. 21CV30002
Honorable Todd L. Vriesman, Judge

---

Eric Bernhardt, Melanie Bernhardt, and Colleen Bernhardt,

Plaintiffs-Appellees,

v.

Kenneth Russell Thompson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Murr Siler Eckels Delaney, PC, Joseph A. Murr, Daniel R. Delaney, Denver, Colorado, for Plaintiffs-Appellees

Levin Sitcoff PC, Bradley A. Levin, Gideon S. Irving, Denver, Colorado, for Defendant-Appellant

¶ 1     In this action to determine the existence of an implied easement, the defendant, Kenneth Russell Thompson, appeals the district court's judgment in favor of the plaintiffs, Eric Bernhardt, Melanie Bernhardt, and Colleen Bernhardt, on their claims for trespass, permanent injunctive relief, quiet title, and declaratory relief.  Thompson contends the court erred by finding that (1) an easement implied by prior use serves the Bernhardts' property and burdens his property; (2) he had notice of the easement; and (3) the easement was not extinguished by adverse possession.  He further contends the court erred by failing to grant full relief pursuant to C.R.C.P. 105 when it entered its final judgment and decree.  We disagree with all but the last of these contentions.  We therefore affirm the judgment and remand the case to the district court for further proceedings consistent with this opinion.

## I.     Background

¶ 2     We draw the following factual background from the record and the district court's order issued after a bench trial.  The court's findings have record support.

¶ 3     The illustration below depicts land in Gilpin County that was owned in the 1960s by Albert and Matilda Stahn.

1



The Subject Land Labeled with Current Owners

A Gilpin County road intersects the parcel labeled Section 3 diagonally. The Stahns constructed a residence in the southern portion of the parcel labeled Section 2 — the property now owned by the Bernhardts. To access the county road, they built a driveway across Section 3, connecting their new home in Section 2 to the county road. This driveway — hereafter referred to as the North Road — marks the approximate location of the disputed easement, which we will refer to as the North Road easement.

¶ 4    The Stahns later conveyed the southern portion of Section 2 containing their home to Adolf and Verlyn Wilhelm. The 1972 warranty deed did not describe an easement for access by the Wilhelms over the Stahns' property, but the Wilhelms nonetheless used the North Road across Section 3 as the exclusive means of accessing their property.

¶ 5    In 1978, both the Stahns and the Wilhelms sold their land. First, the Stahns sold the southern portion of Section 3 to Roland Morrison. Their April 5, 1978, deed to Morrison created a fifty-foot-wide access easement along the shared border, with twenty-five feet on the Morrison parcel and twenty-five feet on the Stahns' remaining parcel. We will refer to the road dividing these properties as the South Road and this easement as the South Road easement. The Stahns did not record the South Road easement against their own property.

¶ 6    Next, the Stahns prepared to sell their remaining property — the northern portions of Section 3 and Section 2, now owned by Thompson. Learning of the upcoming sale, the Wilhelms commissioned a survey of the North Road from the county road

across Section 3 to their home in the southern portion of Section 2. The Wilhelms recorded a certificate of survey on July 31, 1978.

¶ 7      Before the Stahns sold their remaining property, the Wilhelms asked the Stahns to formally recognize the North Road easement. On August 1, 1978, the Stahns executed a new warranty deed to the Wilhelms for their previously purchased property. The 1978 Wilhelm deed expressly granted an easement over the Stahns' property in Section 3, with a description approximately matching the North Road as surveyed. But — as with the South Road easement — the Stahns did not record the North Road easement against their own property.

¶ 8      That same day, the Stahns sold their remaining property to Russell Pershing. The Stahns' warranty deed to Pershing contained standard language that title was "subject to easements . . . of record," but it did not specifically acknowledge either the North Road easement (which the Stahns had described that same day in the 1978 Wilhelm deed) or the South Road easement. It did, however, describe an "easement for ingress and egress over a strip of land 20 feet wide" in the approximate location of the North Road. We will refer to this easement as the Pershing easement. The

description of the Pershing easement substantially matches the description of the North Road easement in the 1978 Wilhelm deed until the final 128 feet, where the Pershing easement veers north.

¶ 9    The Wilhelms' property is now owned by the Bernhardts. Their title identifies the North Road easement. The Pershing property is now owned by Thompson. His title identifies the Pershing easement but not the North Road easement.

¶ 10    The Bernhardts sued Thompson in 2021, alleging that he was "blocking the [North Road] with boulders, concrete barriers and other debris, making it unusable for ingress to and egress from" their property. After a two-day bench trial in 2022, the district court found that "an easement in the location of the North Road has existed since 1972 over the land that is now owned by Thompson in Section 3 . . . . The North Road easement serves the Bernhardt Property and burdens the Thompson Property." The court quieted title in favor of the Bernhardts and permanently enjoined Thompson from blocking the North Road easement.

¶ 11    Thompson moved for reconsideration, which the court denied. In its final judgment and decree on December 30, 2024, the court adopted a new legal description of the North Road easement

prepared by a registered professional land surveyor and ordered that "[t]his legal description of the North Road Easement would supersede and replace all previous descriptions."

¶ 12    Thompson now appeals.

## II.    Standard of Review

¶ 13    When a court enters judgment following a bench trial, that judgment presents a mixed question of law and fact. *State Farm Mut. Auto. Ins. Co. v. Johnson*, 2017 CO 68, ¶ 12. We review the court's legal conclusions de novo and its factual findings for clear error. *Id.*; *May v. Petersen*, 2020 COA 75, ¶ 10. We will not disturb the court's factual findings unless there is no evidence in the record to support them. *Petersen*, ¶ 10.

¶ 14    "It is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence." *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007). It is not our role to reweigh the evidence. *Gagne v. Gagne*, 2019 COA 42, ¶ 51. And we draw all reasonable inferences from the evidence in favor of the prevailing party, including inferences and conclusions drawn from

conflicting evidence. *See Weisiger v. Harbour*, 62 P.3d 1069, 1071 (Colo. App. 2002).

### III. Easement Implied by Prior Use

¶ 15    Thompson contends the district court erred by finding that the Bernhardts proved all the elements required to establish an easement implied by prior use. We are not persuaded.

¶ 16    To establish an easement implied by prior use, a party must demonstrate that (1) the servient and dominant estates were once under common ownership; (2) the right alleged was exercised prior to the severance of the estate; (3) the use of the right was not merely temporary; (4) the continuation of this use was reasonably necessary to the enjoyment of the parcel; and (5) a contrary intention is neither expressed nor implied. *Lobato v. Taylor*, 71 P.3d 938, 951 (Colo. 2002). Only the third, fourth, and fifth elements are at issue here.

¶ 17    In addressing the third and fourth elements, the district court found that

> [t]he Stahns lived in the cabin on [what would become] the Bernhardt Property year-round and accessed that cabin via the North Road every day. . . . No other route was used to

access the home when occupied by the Stahns . . . .

Thompson argues that these findings lack record support — specifically, that no trial testimony addressed "how long, how regularly, or for what purposes the Stahns did or did not use the North Road."

¶ 18     The record belies Thompson's argument.  The district court heard testimony about the Stahns' use of the North Road from Verlyn Wilhelm, now known as Verlyn Distel.[1]  Ms. Wilhelm testified that she met the Stahns when they took the Wilhelms to see the house.  When asked whether, at the time of the purchase, she understood that she and her husband would use the North Road to access the property, she confirmed that she did, stating:

> Yeah.  Basically because . . . that's the road [the Stahns] took us up on when they showed us the house.  And that was the road I believe they were using at the time because they never referred to [any other].

After purchasing the property, according to Ms. Wilhelm, she and her husband used the North Road every day.  On redirect

---

[1] For ease of understanding, we will refer to Ms. Distel as Ms. Wilhelm, her name at the relevant time period.  We intend no disrespect by referring to Ms. Distel in this manner.

examination, she again testified that the Stahns had used the North Road to reach their house before the Wilhelms purchased it and that her own use of the North Road was "consistent" with the Stahns' use. She also testified that while the South Road existed in 1972, she "never" used it for access because it was "rough," "rocky," and "just too steep."

¶ 19    Ms. Wilhelm's testimony that her daily, exclusive use of the North Road was "consistent" with the Stahns' directly supports the district court's finding that the Stahns "accessed that cabin via the North Road every day" and that "[n]o other route was used to access the home when occupied by the Stahns."

¶ 20    Thompson further argues that the Stahns' exclusive use of the North Road is insufficient to prove the element of reasonable necessity because it is conceivable that the Stahns *could have* used the South Road but chose not to. But although Ms. Wilhelm testified that both roads were "mountainous" and neither was "a picnic," she described the South Road as "just too steep" to use for access. And while Ms. Wilhelm testified that the South Road existed in 1972, the evidence on this point was conflicting. Russell Pershing, who purchased what would become Thompson's property

9

from the Stahns in 1978, testified that he did not recall the South Road existing when he owned the property. The district court appears to have credited Pershing's testimony, finding that "the South Road did not exist formally . . . in 1972."

¶ 21 Drawing all reasonable inferences in favor of the prevailing party, including inferences from conflicting evidence, *see Weisiger*, 62 P.3d at 1071, we conclude that the record supports the district court's finding that the Bernhardts established the third and fourth elements by a preponderance of the evidence.

¶ 22 Turning to the fifth element — that a contrary intention is neither expressed nor implied — Thompson argues that the absence of any reference to the North Road easement in the 1972 Wilhelm deed "shows that [the Stahns] didn't intend to create an easement in 1972," when the parcels were severed from common ownership. But the record supports the district court's finding that the Stahns' conduct demonstrates their intent more reliably than their "amateur attempt at legal implementation." Ms. Wilhelm testified that the Stahns used the North Road as the exclusive means of access to their house and took the Wilhelms to see the house via the North Road.

¶ 23     The Stahns' later conduct further supports their intent to create an easement in 1972.  In 1978, when the Wilhelms asked that the North Road easement be *formally* recognized before the sale of the Stahns' remaining property, the Stahns executed a new warranty deed expressly memorializing it.  As the district court found, "[t]he 1978 second deed from the Stahns confirmed in writing this prior use and the parties' intent" in 1972.  Contrary to Thompson's argument that the district court erred by considering the 1978 deed because "the parties' intent in 1978 is irrelevant," the court's order makes clear that it considered the 1978 deed only as additional evidence of the parties' intent in 1972.

¶ 24     Drawing all reasonable inferences in favor of the prevailing party, we conclude the record supports the district court's finding that the Bernhardts established the fifth element by a preponderance of the evidence.

¶ 25     We therefore discern no error in the court's finding that the Bernhardts proved all the elements required to establish an easement implied by prior use.

11

¶ 26    Thompson contends the district court erred by finding that he had notice of the easement.  We disagree.

¶ 27    In Colorado, there are three types of notice: actual, constructive, and inquiry.  *Martinez v. Affordable Hous. Network, Inc.,* 123 P.3d 1201, 1206 (Colo. 2005).  "Actual notice occurs when a party has actual knowledge of a title defect."  *Id.*  Constructive notice occurs when "a [party's] search of the title records would have revealed [the] defect."  *Id.*  Inquiry notice arises when "a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another."  *Id.* (quoting *Franklin Bank, N.A. v. Bowling,* 74 P.3d 308, 313 (Colo. 2003)).

¶ 28    Inquiry "notice will not be 'imputed to a purchaser if a reasonable search would prove, or would have proven, futile.'"  *Id.* (quoting *Littlefield v. Bamberger,* 32 P.3d 615, 619 (Colo. App. 2001)).  But if circumstances exist that would arouse the "suspicions of an ordinary purchaser," then "[i]nquiry notice imputes knowledge" upon the purchaser.  *Id.* at 1207; *see Lobato v. Taylor,* 70 P.3d 1152, 1163 (Colo. 2003) ("Although, generally, only documents within a chain of title must be searched to determine

12

relevant interests in real property, more is required where it appears that outside interests may affect title. In such instances, an individual has a duty to investigate these other interests and is charged with knowledge of the facts to which the investigation would have led.").

¶ 29 The district court found that Thompson had inquiry notice of the North Road easement, for two reasons. First, Thompson's deed contained "language . . . that incorporates an easement in the same location" as the North Road easement. Although this language refers to the Pershing easement rather than the North Road easement, the two are substantially identical except for the last 128 feet. And although the Pershing easement did not extend to the Bernhardts' property, Thompson reiterated his deposition testimony at trial that the person who sold him his property told him the easement benefitted his neighbors — that is, the Bernhardts. He also testified that he had considered whether the Bernhardts held an easement over his property and concluded that, if they did, they had abandoned it.

¶ 30 Second, the district court found that the undisputed physical facts independently gave rise to inquiry notice. Specifically,

13

> [a] physical North Drive is cut into the land. A metal gate and old mailbox exist across the North Road where it enters [the Bernhardts'] property. The gate and mailbox were in that location for years, during the entire period of . . . Thompson's ownership.

¶ 31    Drawing all reasonable inferences in favor of the prevailing party, we conclude that the record supports the district court's finding that Thompson had notice of the North Road easement.

## V.    Adverse Possession

¶ 32    Thompson contends the district court erred by finding that the North Road easement was not extinguished by adverse possession. We discern no error.

¶ 33    To prevail on an adverse possession claim for fee simple title to real property, a party must demonstrate by clear and convincing evidence that possession of the disputed area was actual, adverse, hostile, under a claim of right, exclusive, and uninterrupted for eighteen years. *Smith v. Hayden*, 772 P.2d 47, 52 (Colo. 1989); *see* § 38-41-101(1), (3)(a), (3)(b)(I), C.R.S. 2025. Additionally, "an adverse claimant must establish a good faith belief that he or she (or a predecessor in interest) was the property's actual owner, which

14

belief was reasonable under the circumstances." *Lensky v. DiDomenico*, 2016 COA 89, ¶ 25; § 38-41-101(3)(b)(II).

¶ 34     But when "adverse possession is claimed solely as a defense to an action for damages based upon a claim for trespass . . . against the adverse possessor, and not to seek an award of legal title against the claimant, the burden of proof shall be by a preponderance of the evidence." § 38-41-101(5)(b).  The good faith requirement likewise does not apply to claims that do not seek to establish fee simple title to real property and instead concern only "the creation, establishment, proof, or judicial confirmation or delineation of easements." § 38-41-101(4).  "If the defendant is claiming adverse possession solely as a defense to an action and not to seek an award of legal title, the defendant shall so state in a pleading filed by the defendant within ninety days after filing an answer . . . ." § 38-41-101(5)(b).

¶ 35     In his answer to the Bernhardts' second amended complaint, Thompson asserted adverse possession both as a defense *and* as an affirmative counterclaim.  As a defense, he asserted that "[p]laintiffs' claimed easement has been extinguished by adverse possession."  As a counterclaim, he asked the court to "quiet title and to declare

15

the claimed [North Road] Easement, if it ever existed, extinguished by adverse possession."

¶ 36     In its order denying Thompson's motion for reconsideration, the district court treated his assertion of adverse possession as an affirmative counterclaim, noting that Thompson "seeks to extinguish the easement and own the land in fee simple to the exclusion of the easement." The court ruled that "the adverse possession claim is groundless." After noting that Thompson had the burden of establishing each element of adverse possession by clear and convincing evidence, it found that "the entire 18-year prescription period of openly hostile and exclusive possession is obscured and not proven." It further found that Thompson had not demonstrated that he and his predecessor in interest held a reasonable good faith belief "that they were the actual owner of the property instead of [the Bernhardts]."

¶ 37     Thompson argues that the district court erred by applying the clear and convincing evidence standard and by requiring a reasonable good faith belief, because he asserted adverse possession both as a defense and as an affirmative counterclaim. We are not persuaded, for three reasons.

¶ 38    First, Thompson did not preserve the argument he raises here — that the district court should have applied a preponderance of the evidence standard and should not have required a good faith belief. Although he addressed adverse possession in his written closing argument and in a supplement to his motion for reconsideration, he did not raise these issues. *See Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18 ("It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal.").

¶ 39    Second, whether couched as a defense or as a counterclaim, Thompson's assertion that the easement was extinguished by adverse possession is, in essence, a claim that he owns the land in fee simple, not subject to the easement. The district court acknowledged as much when it noted that Thompson "seeks to extinguish the easement and own the land in fee simple to the exclusion of the easement."

¶ 40    Third, section 38-41-101(5)(b) does not apply to Thompson's assertion of adverse possession because Thompson did not claim adverse possession "solely as a defense to an action for damages."

§ 38-41-101(5)(b).  Rather, he also sought "an award of legal title" against the Bernhardts.  *Id.*

¶ 41     We thus conclude that the district court did not err by rejecting Thompson's adverse possession claim.

## VI.     Full Relief Under C.R.C.P. 105

¶ 42     Finally, Thompson contends the district court erred by failing to grant full relief under C.R.C.P. 105 when it entered its final judgment and decree.  Specifically, he argues that, when the district court adopted a new survey of the North Road easement, it "declined to also extinguish two surveyed easements that appear in the record along a nearly identical path as the [North Road easement]."  He further argues that the court should have declared the Pershing easement "extinguished in its entirety."

¶ 43     Thompson preserved this argument in his response to the Bernhardts' motion to accept proposed judgment, but the district court did not address it.  C.R.C.P. 105(a) states, "The court may at any time after the entry of the decree make such additional orders as may be required in aid of such decree."  *See Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1290 (10th Cir. 2011) ("[T]he better practice on issues raised [below] but not ruled

on by the district court is to leave the matter to the district court in the first instance." (quoting *Apartment Inv. & Mgmt. Co. v. Nutmeg Ins. Co.*, 593 F.3d 1188, 1198 (10th Cir. 2010))); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005) ("Where an issue has been raised, but not ruled on, proper judicial administration generally favors remand for the district court to examine the issue initially."). Accordingly, we remand the case to the district court to consider Thompson's argument that these three easements should be extinguished.

## VII. Disposition

¶ 44 The judgment is affirmed, and the case is remanded for the district court to consider whether the three easements noted by Thompson in his response to the Bernhardts' motion to accept proposed judgment should be extinguished.

JUDGE GROVE and JUDGE SCHOCK concur.