Darrell M. LITTLEFIELD, Jr., and Janet S. Littlefield, Plaintiffs–Appellees and Cross–Appellants,

v.

Alvin R. BAMBERGER, Jacob A. Bamberger, and Kris A. Bamberger, Defendants–Appellants and Cross–Appellees.

No. 99CA1780.

Colorado Court of Appeals, Div. III.

Aug. 2, 2001.

Max Minnig, Jr., & Associates, LLC, Max A. Minnig, Jr., N. Nora Nye, Denver, CO, for Plaintiffs–Appellees and Cross–Appellants.

John Kokish, P.C., John Kokish, Teresa M. Cole, Castle Rock, CO, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge DAILEY.

In this trespass case, defendants, Alvin R. Bamberger, Jacob A. Bamberger, and Kris A. Bamberger, appeal the trial court's judgment requiring them to return to its original condition a strip of land upon which they built a road. Plaintiffs, Darrell M. Littlefield, Jr. and Janet S. Littlefield, cross-appeal the order granting only a portion of their requested attorney fees. We affirm.

The parties live on adjacent ranches east of Kiowa. Plaintiffs purchased their property in 1994; defendants purchased theirs in 1997. Straddling their boundary line for half a mile was a sixty-foot-wide grassy strip of land with a set of tire ruts in the middle and with fences running along both sides. Continuing north of this strip for half a mile was a sixty-foot-wide road designated as County Road 113. Fences also ran alongside both sides of the road.

In the past, the parties, the previous owners of their respective properties, their neighbors, and some hunters had used the strip to access different parts of their properties and nearby hunting grounds. Occasionally the strip had been used to graze cattle and to move cattle onto the properties of nearby landowners.

In 1998, defendants subdivided a portion of their property and needed to build a road to access the new subdivision. Initially, defendants believed that they would have to build that road completely on their side of the section line. However, after discovering a 1921 road permit, which they believed made the strip a county road, defendants built a road encompassing most of the strip. Defendants agreed to maintain the road for two years, and the county agreed to maintain it thereafter.

Plaintiffs filed a trespass action, claiming that the new road encroached upon their property. The trial court, after a two-day bench trial, agreed, concluding that the strip was not a public road but only "a private easement allowing access to adjoining land for ranching purposes." Consequently, the court ordered defendants to return the strip to "land suitable for grazing with a road down the middle no wider than the width of a standard pick-up truck."

On appeal, defendants contend that the trial court erred in failing to find that the strip was a public road by virtue of: (1) a 1921 road petition; (2) adverse use; or (3) plaintiffs' and their predecessors' acquiescence in boundaries for a period of twenty years. On cross-appeal, plaintiffs contend that they were entitled to recover all their attorney fees in this case. Each of these contentions will be discussed in turn.

*I. 1921 Road Petition*

Defendants contend that the trial court erred in finding that plaintiffs' title to the portion of the strip on their side of the section line was unencumbered by a public road created in 1921. We disagree.

In 1921, the county commissioners granted a petition filed by the parties' predecessors in interest to establish a road on the strip. The trial court determined, without dispute, that the creation of a public road by road petition was authorized by § 2972, G.S. (1883).

In *City of Lakewood v. Mavromatis*, 817 P.2d 90 (Colo.1991), the supreme court interpreted that statute as requiring that road petitions be placed in county road books *and* recorded pursuant to the recording act. The court determined that placement of the petition in the road book sufficed to create the road; however, adherence to the recording act procedures was necessary to put subsequent purchasers of land affected by the petition on constructive notice of the contents of the petition. Thus, where a road petition had not been recorded in the grantor/grantee indices of the county clerk and recorder's office, subsequent purchasers of the affected land took title to the land unencumbered by the public road unless they had actual notice of it.

Defendants acknowledge that here, as in *Mavromatis*, the road petition had not been recorded as required. Consequently, defendants acknowledge that plaintiffs did not have constructive notice of the contents of the road petition.

Nevertheless, defendants argue that *Mavromatis* is not dispositive here because the court in *Mavromatis* had no occasion to determine whether, despite lacking constructive notice, the subsequent purchasers had actual or inquiry notice of the existence of the rights to construct and maintain a highway on the strip. *See City of Lakewood v. Mavromatis, supra*, 817 P.2d at 99 n. 22. According to defendants, plaintiffs here had such actual notice or were placed on inquiry notice by a sign a half mile north of the properties indicating the presence of County Road 113, the positions of the parties' fences, the tire tracks in the strip, and occasional maintenance done by the county in knocking down the tire ruts.

■ Plaintiffs having established their record title, defendants had the burden of proving plaintiffs had actual or inquiry notice that the strip was part of County Road 113. *See*

*Clay Properties, Inc. v. Washington Post Co.*, 604 A.2d 890, 898 (D.C.1992); *Hendricks v. Lake*, 12 Wash.App. 15, 21–22, 528 P.2d 491, 495 (1974). Issues pertaining to actual and inquiry notice are questions of fact, and the trial court's findings will not be disturbed if there is a basis in the record to support them. *Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353, 1356 (Colo.App.1995).

Here, the trial court found that plaintiffs did not have actual notice of a county road but at most were "on inquiry notice to investigate the status of the strip." Further, the court concluded that even if plaintiffs had inquired about the strip, such an inquiry "would [have been] unlikely to demonstrate that the strip was part of a public road."

At trial, plaintiff Darrell Littlefield testified that the first time he actually knew about the road petition was three days before defendants started the road construction. Defendants presented no evidence to contradict this testimony or to otherwise suggest that plaintiffs had actual knowledge that the strip was a county road. And, as the trial court noted, the conditions of the property were as consistent with the existence of a private easement as with a public road. Under these circumstances, we must conclude that the trial court's finding of plaintiffs' lack of actual notice is adequately supported by the record. *See Adelson v. Board of County Commissioners*, 875 P.2d 1387, 1389–90 (Colo.App.1993)(none of the party's research revealed that property was supposed to be a public way, and the appearance of the road was such that no actual notice of its public character could be inferred).

■ Inquiry notice is notice inferred from secondary facts. Inquiry notice

exists when the purchaser has notice of some fact that, in accordance with human experience, is sufficiently curious or suspicious that the purchaser should be obliged to make a further inquiry into it. If a reasonable inquiry would reveal that there is another outstanding interest, then the purchaser is on inquiry notice of that interest.

14 R.R. Powell & M.A. Wolf, *Powell on Real Property* § 82.02[1][d][iv] at 82–71 (2000). *See Burman v. Richmond Homes Ltd.,* 821 P.2d 913, 919 (Colo.App.1991)("the receipt of inquiry notice charges a party with notice of all facts that a reasonably diligent inquiry would have disclosed").

■ No notice, however, should be imputed to a purchaser if a reasonable search would prove, or would have proven, futile. *See* Powell & Wolf, *supra,* § 82.02[1][d][iii] at 82–57 ("the burden of investigation must be governed by some standard of reasonableness"), 82–55 ("if the search, even though not conducted, was certain to be futile, no notice should be imputed").

Here, none of the neighbors who testified for either of the parties claimed to have knowledge of the road petition prior to defendants' discovery of the petition, and a previous owner of plaintiffs' property stated that during the twenty-three years he lived there, no one ever claimed that the strip was a public road. Plaintiff Janet Littlefield testified that plaintiffs had looked at a map in a county plat book before they purchased the property, and it did not indicate that the strip was a road. Although one state department of transportation map showed the strip as part of County Road 113, two witnesses (in addition to plaintiffs) testified that they had not seen that map and that other maps they had consulted contained no indication that a public road ran through the strip. Finally, defendant Alvin Bamberger testified at one point that even he thought he would have to build a private road solely on his property until he discovered the petition itself.

Under these circumstances, the record supports the trial court's finding that defendants failed to prove that plaintiffs were on inquiry notice that the strip was part of County Road 113. *See Jarnagin v. Busby, Inc.,* 867 P.2d 63, 66 (Colo.App.1993)(the credibility of witnesses and the sufficiency, probative effect, and weight of the evidence are all within the province of the trial court); *Absolute Employment Services, Inc. v. Industrial Claim Appeals Office,* 997 P.2d 1229, 1234 (Colo.App.1999)("Although there may be some evidence in the record from which the [trier of fact] could have drawn [a particular] inference . . . , [the trier of fact] certainly was not compelled to find this evidence persuasive. . . ."). *See also Adelson v. Board of County Commissioners, supra,* 875 P.2d at 1389–90 (upholding trial court's finding that conditions of land were insufficient to put party on inquiry notice of the existence of a public road).

Consequently, we conclude that the trial court did not err in finding that plaintiffs acquired their property unencumbered by any public road created as a result of the 1921 petition.

## II. Adverse Use

Defendants also contend that the evidence produced at trial established that the strip became a public road through adverse use. We are not persuaded.

Section 43–2–201(1)(c), C.R.S.2000, provides that public highways include:

All roads over private lands that have been used adversely without interruption or objection on the part of the owners of such lands for twenty consecutive years.

■ A party claiming a public highway by adverse use bears the burden of proving that: (1) the public has used the road under a claim of right and in a manner adverse to the landowner's property interest; (2) such use has been without interruption for the statutory period of twenty years; and (3) the landowner has actual or implied knowledge of the use and has made no objection. *Walter v. Hall,* 940 P.2d 991, 995 (Colo.App. 1996), *aff'd,* 969 P.2d 224 (Colo.1998).

Here, the trial court concluded that defendants had not met their burden of proof with regard to the first requirement, i.e., public use. It found that there was very little evidence of use by the general public and that the "occasional maintenance undertaken by the county was not enough activity to change the character of the road from a private road to a public road."

At trial, a previous owner testified that only a couple of neighbors and nobody else used the strip, and contrary to affording the public free access to the strip, both plaintiffs

and previous owners testified they would confront strangers who were on the strip without permission. Plaintiff Darrell Littlefield testified that when they purchased the property, two neighbors whose properties were at one end of the strip asked permission to continue using the strip to occasionally access their properties. Further, plaintiffs and previous owners informed various hunters that they did not have a right to use the strip.

Defendants, however, point to the following evidence, which, in their view, supports a different conclusion: (1) the fences run along both County Road 113 and the strip; (2) from the 1920s to 1946, the strip was used by the United States Post Office as a mail route; (3) the county regularly maintained the strip for that purpose during that period; (4) sometime in the 1960s, an oil company used the strip to move its equipment onto one of the properties to drill a well; and (5) a school bus used the northern part of the strip to turn around after picking up children who used to live on plaintiffs' property.

■ The mere existence of a fence does not establish adverse possession or use beyond the fence line; only when both property owners believe that the fence has marked the true boundary between the property for the statutory period is there a presumption that the possession or use is adverse. *Board of County Commissioners v. Ritchey*, 888 P.2d 298, 304 (Colo.App.1994). Here, plaintiffs did not, and do not, believe that the fences mark the boundaries of the parties' properties, nor did defendants produce any evidence that any of plaintiffs' predecessors in interest believed for the requisite number of years that the fences constituted boundary markers. *Cf. Board of County Commissioners v. Ritchey, supra.*

■ Further, defendants proffered only hearsay evidence that the strip was used as a mail route prior to 1942, and the trial court properly sustained plaintiffs' objection to this evidence. Similarly, there was no competent evidence about when the county began maintaining the strip as a mail route.

■ And, the oil company and the school apparently used the strip with the owners'

permission, and not adverse to their interests. In any event, the use seems to have been sporadic in nature, rather than part of a pattern of general public use.

Under the circumstances, we conclude that the record supports the trial court's finding that there was insufficient evidence of continuing adverse public use of the strip. *See Absolute Employment Services, Inc. v. Industrial Claim Appeals Office, supra; Jarnagin v. Busby, Inc., supra. See also Enerwest, Inc. v. Dyco Petroleum Corp.*, 716 P.2d 1130, 1132 (Colo.App.1986)(testimony that hunters and fishermen had been prevented from using a road supported the trial court's finding that the public use was permissive rather than adverse).

### III. Acquiescence to Boundaries

■ Finally, defendants contend that a public right-of-way exists under § 38–44–101, et seq., C.R.S.2000, because the parties or their predecessors in interest acquiesced in the fence lines being their boundaries for more than twenty consecutive years.

Initially, we note that defendants presented this argument to the trial court only in one sentence of their trial brief and then failed to request that the trial court rule on it. Defendants have, accordingly, not properly preserved this point for appellate review. *See Highland Meadow Estates at Castle Peak Ranch, Inc. v. Buick*, 994 P.2d 459, 462 (Colo.App.1999)(issue mentioned in the pleadings and trial management order but not raised again during or after trial), *aff'd in part & rev'd in part on other grounds*, 21 P.3d 860 (Colo.2001); *People v. Young*, 923 P.2d 145, 149 (Colo.App.1995)(party failed to request a ruling on issue from the trial court).

■ In any event, this argument suffers from the same evidentiary flaw as does the adverse use argument, i.e., there is no evidence in the record indicating how long any previous owners actually believed that the fences established the boundaries of their property.

*IV. Attorney Fees*

 On cross-appeal, plaintiffs contend that they are entitled to recover the entire amount of their attorney fees in prosecuting and defending this action. More specifically, plaintiffs argue that attorney fees are warranted: (1) as compensatory damages, or under § 13–21–102, C.R.S.2000, as exemplary damages; (2) under § 13–17–102, C.R.S.2000, because the public road defense was groundless and frivolous; (3) because defendants' prosecution of their counterclaim was vexatious; and (4) based on equity. We are not persuaded.

Colorado adheres to the American Rule, under which parties normally pay their own attorney fees. Consequently, whether characterized as "damages" or "costs," attorney fees are recoverable only where authorized by express contract, statute, or court rule. *Ferrell v. Glenwood Brokers, Ltd.,* 848 P.2d 936, 940 (Colo.1993).

Here, there is no contract between the parties, and no statute or court rule authorizes attorney fees as damages in a trespass action. Attorney fees could not be awarded as exemplary damages because plaintiffs, in their complaint, did not seek an award of actual damages, a prerequisite for obtaining exemplary damages. *See Concord Realty Co. v. Continental Funding Corp.,* 776 P.2d 1114, 1123–24 (Colo.1989).

Defendants' defense of this suit, albeit unsuccessful, was not frivolous. *See Wood Bros. Homes, Inc. v. Howard,* 862 P.2d 925, 935 (Colo.1993). The trial court has already awarded plaintiffs attorney fees attributable to their defense of the counterclaims under § 13–17–102. And, finally, Colorado does not recognize an equitable exception to the American Rule. *See Bunnett v. Smallwood,* 793 P.2d 157, 161 (Colo.1990)(rejecting equity as a basis for awarding attorney fees).

Under the circumstances, we conclude that the trial court did not err in failing to award additional attorney fees to plaintiffs.

Accordingly, the judgment and order are affirmed.

Judge JONES and Judge MARQUEZ concur.