2012 COA 96

**GOODMAN ASSOCIATES, LLC,**
Plaintiff–Appellant,

v.

**WINTER QUARTERS, LLC; and Capital West National Bank, a/k/a First National Bank of Wyoming, Defendants–Appellees.**

**No. 11CA1657.**

Colorado Court of Appeals,
Div. V.

June 7, 2012.

Bennington Johnson Biermann & Craigmile, LLC, Philip E. Johnson, Tami L. Sapp, Denver, Colorado, for Plaintiff–Appellant.

Sweetbaum Sands Anderson, P.C., Alan D. Sweetbaum, Thomas L. DeVine, Jr., Denver, Colorado, for Defendants–Appellees.

Opinion by Judge BOORAS.

¶ 1 In this priority dispute between competing lienholders, plaintiff, Goodman Associates, LLC (Goodman), appeals the trial court's order that Goodman's amended judgment lien does not have priority over a deed of trust given by defendant Winter Quarters, LLC (Winter Quarters), to defendant Capital West National Bank (Capital West), for the purchase price of certain property in Grand County. Goodman also appeals the trial court's order denying its motion for reconsideration. We affirm.

## I. Background

¶ 2 The parties stipulated to the following facts in a joint motion, which was approved and adopted by the trial court.

### A. Eagle County District Court Case

¶ 3 On October 22, 2008, Goodman filed a complaint in Eagle County District Court, alleging claims against WP Mountain Properties, LLC (WPMP) for declaratory judgment and breach of contract arising out of a failed purchase and sale agreement between the parties (the Eagle County case). After WPMP failed to file any responsive pleadings, Goodman moved for entry of a default judgment. On December 4, 2008, the Eagle County District Court entered a default judgment in favor of Goodman and against WPMP.

¶ 4 Goodman filed a transcript of the default judgment with the Grand County Clerk and Recorder, which identified a judgment amount of $152,289.98, plus 8% interest "per annum compounded annually from the date of judgment until paid in full," and a judgment date of December 4, 2008 (the December 2008 judgment lien). The transcript of judgment was appropriately filed and recorded and encumbered all real property owned by WPMP within Grand County, which included the subject property here—Lot 13 within the Lakota Park subdivision.

¶ 5 On January 9, 2009, Winter Quarters purchased Lot 13 from WPMP, financed by a promissory note secured by a deed of trust in favor of Capital West. Capital West's deed of trust was recorded on January 23, 2009.

¶ 6 On April 3, 2009, WPMP filed a motion to set aside the default judgment, and Goodman filed an objection. The Eagle County District Court granted WPMP's motion to set aside the default judgment.

¶ 7 On June 10, 2009, Goodman filed a petition for relief pursuant to C.A.R. 21 with the Colorado Supreme Court seeking to overturn the order setting aside the default judgment. On January 11, 2010, the Colorado

Supreme Court issued a rule made absolute granting Goodman's requested relief and directing the Eagle County District Court to reinstate the default judgment in favor of Goodman and to determine "whether and to what extent Goodman is entitled to attorney[ ] fees and costs associated with this petition and the underlying motion." *See Goodman Assocs., LLC v. WP Mountain Props., LLC,* 222 P.3d 310, 323 (Colo.2010). The Colorado Supreme Court issued a mandate on February 1, 2010.

¶ 8 On February 11, 2010, pursuant to the Colorado Supreme Court's mandate, the Eagle County District Court entered an order vacating the order setting aside the default judgment and directing that the order filed on December 4, 2008 should be reinstated nunc pro tunc.

¶ 9 Thereafter, Goodman filed a motion for an award of attorney fees and costs against WPMP and a supplement thereto in the amount of $134,138.90, plus interest. On June 17, 2010, the Eagle County District Court entered the amended judgment, which included a calculation of post-judgment interest through June 15, 2010, and added an award of attorney fees in the amount of $137,138.90.

¶ 10 Goodman recorded a transcript of the amended judgment with the Grand County Clerk and Recorder on July 1, 2010, which identified the judgment date as December 4, 2008 and the original judgment amount as $307,081.27, plus 8% post-judgment interest per annum "compounded annually from the date of judgment until paid in full" (the July 2010 amended judgment lien).

### B. Grand County District Court Case (the Instant Case)

¶ 11 While the Eagle County case was pending, a foreclosure action involving Lot 13 had been commenced in Grand County District Court. Goodman filed a cross-claim for priority and foreclosure of the July 2010 amended judgment lien against Winter Quarters and Capital West (collectively, Capital West). Based on the above-mentioned stipulated facts, the parties filed cross-motions for a determination of a question of law pursuant to C.R.C.P. 56(h) regarding whether Capital West's interest in Lot 13 was subject to the July 2010 amended judgment lien.

¶ 12 The trial court concluded that, although Capital West had notice of the December 2008 judgment and continuing accrual of interest, Capital West did not have notice of the subsequent litigation between Goodman and WPMP that resulted in the July 2010 amended judgment lien. The court determined that "there was no way" that Capital West "could have known, inquired or discovered" that the December 2008 judgment was "subject to change" or going to "increase by over 100%":

> Goodman [did] not identify, nor [could] the Court find evidence in the [December 2008] Transcript of Judgment or in any of the stipulated facts that would indicate the judgment would arouse the suspicions of an ordinary purchaser. In fact, a reasonable investigation would have supported [Capital West's] belief that [its] liability was limited to Goodman's [December] 2008 judgment. At the time of purchase, the default judgment was entered against [WPMP,] who did not participate in the litigation and the forty-five (45) days required by Colorado law to appeal the decision . . . was soon to expire. According to the record, WPMP may not even have known about the default judgment against [it] at the time Lot 13 was purchased by [Capital West]. . . .

¶ 13 The trial court therefore ruled that Capital West purchased Lot 13 subject only to the December 2008 judgment lien and that Goodman's priority rights were limited to the amount of the December 2008 judgment lien, plus interest. Because the court ruled on the notice issue, it deemed moot the issue of whether the July 2010 amended judgment lien related back to the December 2008 judgment.

¶ 14 On June 11, 2011, the trial court entered an order of final judgment pursuant to C.R.C.P. 58 in favor of Goodman and against Capital West in the stipulated sum of $101,382.76.

¶ 15 Meanwhile, Goodman had filed a motion for reconsideration of the trial court's C.R.C.P. 56(h) ruling, arguing that the trial

court's order should be vacated because it was based on "an incomplete and inaccurate record of the facts, namely, that [Capital West] had notice of the subsequent litigation between Goodman and WPMP." As a basis for its argument that Capital West had notice, Goodman presented the following additional evidence: (1) the same counsel who represented Capital West also represented WPMP in its appeal of the default judgment in the Eagle County case; and (2) Capital West was monitoring the Eagle County case through its title company.

¶ 16 The trial court chided Goodman for failing to present the additional evidence when the parties stipulated to the facts for the original C.P.R.P. 56(h) motion, but nevertheless reviewed the reconsideration motion under the rubric of C.R.C.P. 60(b), concluding that it would consider the new facts because they were relevant to the issue and were not disputed by, or prejudicial to, Capital West.

¶ 17 The trial court denied the motion for reconsideration, concluding that the July 2010 amended judgment lien did not relate back to the December 2008 judgment lien. The court determined that Goodman's additional evidence only corroborated the fact that Capital West knew of the December 2008 judgment lien and of Goodman's intent to foreclose on that lien:

> The facts show that [Capital West] was making reasonable efforts to follow the [Eagle County] case and even imply [Capital West] attempted to partially satisfy the lien.... What Goodman fails to show is, that by acquiring Lot 13 with a judgment lien for $152,289.98 "plus post interest at the rate of 8% per annum compounded annually from the date of judgment until paid in full," [Capital West] had notice that eighteen months after [Capital West] purchased the property the judgment would be amended to include an additional $137,138.90 in attorney[ ] fees and costs.

¶ 18 The court determined that, based on the facts, an ordinary purchaser would not be suspicious or have any way of knowing that the December 2008 judgment lien would increase "in such manner and amount" and that "a reasonable investigation would have supported" Capital West's understanding that its liability was limited to the amount of the December 2008 judgment lien.

¶ 19 The trial court affirmed its earlier order that Capital West did not have notice of the July 2010 amended judgment lien, and therefore concluded that the July 2010 amended judgment lien did not relate back to the December 2008 judgment lien. The court thus ruled that Capital West purchased Lot 13 "subject only to the amount recorded" in the December 2008 judgment lien and that the full amount of the July 2010 amended judgment lien did not have priority over Capital West's deed of trust recorded on January 23, 2009. In other words, the trial court limited Goodman's priority rights to the amount of the December 2008 judgment lien.

## II. Standard of Review

¶ 20 Under C.R.C.P. 56(h), a trial court may enter an order deciding a question of law if "there is no genuine issue of any material fact necessary for the determination of the question of law." We review questions of law under C.R.C.P. 56(h) de novo. *Snook v. Joyce Homes, Inc.*, 215 P.3d 1210, 1217 (Colo.App.2009).

¶ 21 We review an order denying a motion for relief from judgment for an abuse of discretion. *See* C.R.C.P. 60(b); *see also City of Aurora v. ACJ P'ship*, 209 P.3d 1076, 1082 (Colo.2009). Trial courts have broad discretion under C.R.C.P. 60(b) to vacate judgments whenever such action is appropriate to accomplish justice. *ACJ P'ship*, 209 P.3d at 1082.

## III. Priority of Liens

¶ 22 Goodman contends that the trial court erred in concluding that the July 2010 amended judgment lien did not relate back to the December 2008 judgment lien and that Goodman's priority rights were limited to the amount of the December 2008 judgment lien. We disagree.

¶ 23 Colorado's Recording Act sets out a "race-notice" system that protects buyers or mortgagees who record their liens without notice of prior unrecorded convey-

ances or liens. *See* § 38–35–109(1), C.R.S. 2011. Recording a lien in accordance with statutory requirements creates constructive notice, which under normal circumstances will leave subsequent liens in a position junior to a prior recorded lien. *Joondeph v. Hicks,* 235 P.3d 303, 306 (Colo.2010). This race-notice system "is the linchpin of Colorado real estate law," and it creates certainty and predictability by "enabl[ing] a buyer or mortgagee, by analysis of the chain of title, to determine exactly what it is acquiring." *Premier Bank v. Bd. of County Comm'rs,* 214 P.3d 574, 579 (Colo.App.2009).

¶ 24 Colorado courts have traditionally recognized three forms of notice: actual notice, constructive notice, and inquiry notice. *Martinez v. Affordable Housing Network, Inc.,* 123 P.3d 1201, 1206 (Colo.2005); *Franklin Bank v. Bowling,* 74 P.3d 308, 313 (Colo.2003). Actual notice occurs when a party has actual knowledge of a title defect. *Martinez,* 123 P.3d at 1206; *Franklin Bank,* 74 P.3d at 313. Constructive notice arises where a search of the title records would have revealed a defect. *Martinez,* 123 P.3d at 1206; *Franklin Bank,* 74 P.3d at 313. "Inquiry notice arises when a party becomes aware or should have become aware of certain facts which, if investigated, would reveal the claim of another." *Martinez,* 123 P.3d at 1206 (quoting *Franklin Bank,* 74 P.3d at 313). Inquiry notice imputes knowledge where the circumstances are such that they would have aroused the suspicions of an ordinary purchaser. *Id.* at 1207. Once there is a duty to inquire, the purchaser "will be charged with all knowledge that a reasonable investigation would have revealed." *Id.* (quoting *Franklin Bank,* 74 P.3d at 313). Notice, however, will not be "imputed to a purchaser if a reasonable search would prove, or would have proven, futile." *Id.* at 1206 (quoting *Littlefield v. Bamberger,* 32 P.3d 615, 619 (Colo.App.2001)).

¶ 25 Here, the parties agree that Capital West had notice of the December 2008 judgment lien, which has priority over Capital West's deed of trust. The issue, however, is whether the July 2010 amended judgment lien relates back to the December 2008 judgment lien, thus giving the full amount of the July 2010 amended judgment lien priority over Capital West's interest. As discussed below, this issue turns on whether Capital West knew or should have known about the possibility of future litigation between Goodman and WPMP that resulted in the July 2010 amended judgment lien.

¶ 26 Although this issue has not been specifically addressed by Colorado appellate courts, the general rule recognized by many other jurisdictions is that "liens or property rights acquired intermediate [to] the original judgment and its amendment nunc pro tunc are not affected by the amendment." Annotation, *Correction of Entry or Amendment of Judgment Nunc Pro Tunc as Affecting Intervening Liens and Property Rights,* 48 A.L.R. 1182 (1927) (collecting cases). This rule, "which protects intervening lien or property rights against the effect of an amendment or correction of the judgment, is doubtless conditioned upon the lack of notice or knowledge upon the part of the person asserting such lien or right, of the facts which justified the amendment or correction." *Id.* Although many of the cases that support the general rule do not "expressly refer to [lack of notice], probably for the reason that there was nothing to suggest notice or knowledge in the instant case," some of the cases which apply the rule "stress lack of notice or knowledge on the part of the person asserting the intervening right or lien." *Id.*

¶ 27 This rule is in harmony with the case law in Colorado holding that judgments cannot be rendered or entered nunc pro tunc where such action adversely affects the rights of innocent third parties. *Cf. Perdew v. Perdew,* 99 Colo. 544, 548, 64 P.2d 602, 604 (1936) (rejecting second husband's objection to nunc pro tunc effect of final decree ending wife's first marriage); *see also Stone v. Currigan,* 138 Colo. 442, 449, 334 P.2d 740, 743 (1959) (the general rule is that, except as to the rights of third parties, nunc pro tunc judgments operate retrospectively and are given the same force and effect as if entered at the time the court's decision was originally rendered); *Dickson v. Horn,* 89 Colo. 234, 237–38, 1 P.2d 96, 97 (1931) (nunc pro tunc amendments of a judgment are retrospective as between the parties).

¶ 28 This rule also supports and preserves our recording system's strong policy of creating certainty and predictability by "enabl[ing] a buyer or mortgagee, by analysis of the chain of title, to determine exactly what it is acquiring." *Premier Bank,* 214 P.3d at 579; *see also Routt Cnty. Mining Co. v. Stutheit,* 101 Colo. 254, 257, 72 P.2d 692, 693 (1937) ("Purchasers and creditors who acquire an interest in the property during the pendency of the suit are entitled to stand upon the record as it existed at the time such interest was acquired, and, of course, they cannot be supposed to have knowledge of any matter of which the record does not advise them." (quoting *Tilton v. Cofield,* 2 Colo. 392, 399 (1874), *rev'd,* 93 U.S. 163, 23 L.Ed. 858 (1876))).

¶ 29 We therefore are persuaded that the judgment rendered nunc pro tunc does not operate to the prejudice of Capital West, which was an innocent third party that acquired its interest in good faith after the court rendered the original judgment and before it entered the judgment nunc pro tunc.

¶ 30 Although we agree with Goodman that *Winkler v. Andrus,* 614 F.2d 707, 714 (10th Cir.1980), holds that one who purchases property after a judgment has been entered takes the property subject to any changes affecting his title that may take place on direct appeal, we disagree that this case supports Goodman's proposition that, because the time to file a C.R.C.P. 60(b) motion had not expired, Capital West's deed of trust was subject to the full amount of the July 2010 amended judgment lien entered in the subsequent litigation between Goodman and WPMP.

¶ 31 Here, the stipulated facts, as well as Goodman's additional facts set forth in its motion for reconsideration, support the trial court's finding that Capital West did not have notice of the subsequent litigation between Goodman and WPMP and that Capital West was thus an innocent third party regarding the July 2010 amended judgment lien. The facts clearly demonstrate that Capital West only had knowledge of the December 2008 judgment lien and that Goodman intended to foreclose on that lien. The December 2008 judgment did not contain any indication that the judgment amount would increase by anything more than the amount of interest. Furthermore, a reasonable investigation would have supported Capital West's understanding that its liability was limited to the amount of that judgment lien and that the judgment amount would increase by nothing more than the amount of interest.

¶ 32 When Capital West purchased Lot 13, default judgment had been entered against WPMP, which had not participated in the litigation at all, and arguably may not have even known that default judgment had been entered against it. *See Goodman Assocs.,* 222 P.3d at 313 (WPMP alleged that it learned of the lawsuit in January 2009, more than two months after service, when a title insurance company contacted WPMP's registered agent about the suit). In addition, WPMP's time to file a direct appeal of the default judgment was about to expire. Therefore, it was certainly reasonable for Capital West to assume that the default judgment was final and the amount of the judgment would not be amended by a direct appeal filed by WPMP. *See In re Marriage of Barber,* 811 P.2d 451, 454 (Colo.App.1991) (a judgment becomes final after the period in which to perfect an appeal has expired). The record also reflects that Goodman did not file a notice of lis pendens until March 2009, which was after Capital West had filed its deed of trust. Accordingly, when Capital West purchased the property, the possibility of future litigation, especially the possibility of an attack upon the judgment pursuant to C.R.C.P. 60(b), was not apparent.

¶ 33 We therefore conclude that the record supports the trial court's findings that, when Capital West purchased Lot 13, it had no actual knowledge, and a reasonable investigation of the chain of title would not have revealed, that Goodman's December 2008 judgment lien would be amended to include an additional $137,138.90 in attorney fees and costs incurred in a subsequent C.R.C.P. 60(b) proceeding between Goodman and WPMP. Furthermore, inquiry notice would have led Capital West to the contract that provided for attorney fees between Goodman and WPMP (not Capital West). Although Goodman urges that knowledge of the subsequent litigation between Goodman and WPMP

should be imputed to Capital West because counsel for Capital West was counsel for WPMP in its Rule 60(b) motion to vacate the default judgment and the subsequent appeal to the supreme court, Goodman fails to acknowledge that Capital West purchased Lot 13 *before* its counsel filed the Rule 60(b) motion on behalf of WPMP. At best, this evidence demonstrates that Capital West had knowledge of, or should have known about, the subsequent litigation between Goodman and WPMP *after* Capital West recorded its deed of trust.

¶ 34 Goodman also argues that equity dictates that the relation back doctrine should be applied in this case. However, Goodman articulates no specific reasons for granting such equitable relief. In any event, the purpose of the race-notice statute would be defeated if the July 2010 amended judgment lien were determined to have priority over Capital West's deed of trust, because it would create uncertainty and unpredictability for a buyer or mortgagee in determining exactly what it was acquiring, since the prior recorded judgment lien could be increased at any time based on unknown, future litigation between the parties to the original judgment lien.

¶ 35 We therefore conclude that the trial court did not err in ruling that Capital West did not have notice of the July 2010 amended judgment and is an innocent third party regarding the nunc pro tunc order. Thus, the order does not affect the rights of Capital West, which purchased the lot subject only to notice of the December 2008 judgment. Accordingly, we conclude that the trial court did not err in ruling in favor of Capital West on its C.R.C.P. 56(h) motion and in denying Goodman's motion for reconsideration of that ruling.

¶ 36 In light of our disposition, we deny Goodman's request for an award of attorney fees incurred in the trial court and on appeal.

¶ 37 The orders are affirmed.

GRAHAM and CARPARELLI, JJ., concur.