23CA2093 Dyles v Cost Fund 1 09-19-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2093
City and County of Denver District Court No. 23CV131
Honorable Shelley I. Gilman, Judge

---

Kerry Dyles,

Plaintiff-Appellant,

v.

Cost Fund 1, LLC, a Colorado limited liability company,

Defendant-Appellee.

---

JUDGMENT AND ORDER REVERSED, AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE GOMEZ
Tow and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 19, 2024

---

Springer and Steinberg, P.C., Jeffrey A. Springer, Michael P. Zwiebel, Denver, Colorado, for Plaintiff-Appellant

Burns, Wall and Mueller, P.C., Robert T. Cosgrove, Denver, Colorado, for Defendant-Appellee

¶ 1     In this dispute over the priority of interests in real property located in Denver, Kerry Dyles appeals the trial court's entry of summary judgment and order awarding attorney fees and costs in favor of Cost Fund 1, LLC (Cost Fund).  We reverse both the judgment and the order, and we remand the case with directions.

## I.     Background

### A.     The Competing Deeds of Trust

¶ 2     The property at issue was previously owned by Menucha Enterprise LLC (Menucha).  There are competing deeds of trust relating to the property in favor of Cost Fund and Dyles.

#### 1.     The Cost Fund Deed of Trust

¶ 3     On March 1, 2019, Menucha granted Cost Fund a deed of trust in the property (the Cost Fund deed of trust) to secure a $342,500 note.  That deed of trust was recorded with the Denver County Clerk and Recorder on March 4, 2019.

¶ 4     In July 2019, Menucha and Cost Fund executed a First Loan Modification Agreement (the modification agreement), which increased the amount due under the note to $382,500.  That modification agreement was promptly recorded.

1

### 2. The Dyles Deed of Trust and Note

¶ 5 In between the recording of the Cost Fund deed of trust and the modification agreement, another deed of trust was granted on the same property in favor of Dyles (the Dyles deed of trust). That deed of trust, dated March 29, 2019, secured a $42,360 note. The deed of trust lists "Aharon Sirota of Menucha Enterprise LLC" as the trustor and Dyles as the beneficiary and bears the signature of "Aharon Sirota (Trustor)," as shown in the screenshot below.

Trustor Signature: _____

BY  Aharon Sirota (Trustor)

¶ 6 The note (the Dyles note), which was dated the same day, lists "Aharon Sirota of MENUCHA ENTERPRISE LLC" as the borrower and Dyles as the lender. It bears the signature of "Aharon Sirota of Menucha Enterprise[] LLC."

¶ 7 The Dyles deed of trust and the Dyles note were both filed with the Denver County Clerk and Recorder in April 2019.

### B. This Lawsuit

¶ 8 A few years later, Menucha declared bankruptcy under Chapter 11 of the United States Bankruptcy Code. Pursuant to its

reorganization plan, Menucha granted Cost Fund a deed in aid of foreclosure, which Cost Fund used to sell the property to a third party. During the closing process, the title company discovered the Dyles deed of trust, considered it a cloud on the title, and required an amount sufficient to cover it to be escrowed until the matter could be cleared up. Cost Fund demanded that Dyles release the Dyles deed of trust. Dyles declined.

¶ 9    Dyles then brought this action, asserting claims against Cost Fund for judicial foreclosure of his deed of trust and for unjust enrichment. Cost Fund brought counterclaims seeking a declaratory judgment that the Dyles deed of trust is void and seeking relief on the basis that the Dyles deed of trust is a spurious document.[1]

¶ 10   Cost Fund moved for summary judgment on its counterclaims, arguing that the Dyles deed of trust is invalid and unenforceable because (1) it wasn't properly recorded so as to give Cost Fund or other interested parties notice of it, and (2) it was executed by

---

[1] Dyles initially brought other claims against Menucha and Sirota individually. Cost Fund also brought a cross-claim against Sirota individually. But Menucha and Sirota were later dismissed from the case, leaving only the claims between Dyles and Cost Fund.

3

Sirota in his individual capacity although he had no personal interest in the property. To support its first argument, Cost Fund attached an affidavit verifying the results of a search for "Menucha" in the Denver County Clerk and Recorder's grantor-grantee index. The search results didn't reveal the Dyles deed of trust but did reveal the Dyles note. As to its second argument, Cost Fund didn't dispute Sirota's authority to execute instruments conveying property on behalf of Menucha. Instead, it argued that the Dyles deed of trust "was signed by [Sirota] in his individual capacity, not as a corporate representative" and "states on its face that it is by and between Dyles and [Sirota]."

¶ 11    As part of his response, Dyles submitted documents indicating that the county records erroneously inverted the roles of the parties to the Dyles deed of trust, labeling "Dyles Kerry L" as the grantor and "Aharon Sirota of Menucha Enterprise LLC" as the grantee. This means that the deed of trust wouldn't appear in a search of the property records for "Menucha" as grantor. It's unclear how the error occurred. Dyles also submitted an affidavit verifying that the Dyles deed of trust appeared in a search in the reception number index using the reception number for the deed of trust.

¶ 12    The trial court granted Cost Fund's motion for summary judgment, agreeing with both of its arguments. The parties then stipulated to the dismissal of the only remaining claim in the case — Dyles's unjust enrichment claim against Cost Fund — and the court dismissed that claim. Thereafter, the court awarded Cost Fund $20,503.20 in attorney fees and costs under section 38-35-204(2), C.R.S. 2024, based on its conclusion that the Dyles deed of trust was a spurious document.

¶ 13    Dyles timely appealed both the entry of summary judgment and the attorney fee order. On appeal, he challenges the trial court's conclusions that (1) the Dyles deed of trust wasn't properly recorded so as to give subsequent takers notice of it, and (2) the Dyles deed of trust was executed by Sirota in an individual capacity. We address each in turn.[2]

---

[2] We conclude that, while Dyles's appellate briefing expanded upon the arguments and authorities it presented to the trial court, it sufficiently preserved the contentions it raises on appeal. *See Freed v. Bonfire Ent. LLC*, 2024 COA 65, ¶ 23 ("If a party raises an argument to such a degree that the court has the opportunity to rule on it, that argument is preserved for appeal." (quoting *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50)).

## II. Standard of Review

¶ 14   We review a trial court's grant of summary judgment de novo. *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 11.

¶ 15   Summary judgment should be granted only when the pleadings and supporting documentation show that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c); *Ruiz v. Chappell*, 2020 COA 22, ¶ 8. The moving party bears the burden of establishing the lack of a triable factual issue, and all doubts as to the existence of any such issue are resolved against the moving party. *Stanczyk v. Poudre Sch. Dist. R-1*, 2020 COA 27M, ¶ 51, *aff'd*, 2021 CO 57.

## III. Notice of the Dyles Deed of Trust

¶ 16   Dyles first contends that the trial court erred by concluding that subsequent takers didn't have notice of the Dyles deed of trust. We agree that this issue presents a factual question and, therefore, that summary judgment was not appropriate.

### A. Applicable Law

¶ 17   Colorado courts recognize three forms of notice of interests affecting title to real estate: (1) actual notice, which arises when a

party has actual knowledge of a title defect; (2) constructive notice, which arises when a search of the title records would've revealed a defect; and (3) inquiry notice, which arises when a party becomes aware or should've become aware of certain facts that, if investigated, would reveal another's claim. *Goodman Assocs., LLC v. Winter Quarters, LLC*, 2012 COA 96, ¶ 24; *see also Collins v. Scott*, 943 P.2d 20, 22 (Colo. App. 1996) (under Colorado's race-notice recording statute, the proper recording of documents provides constructive notice of interests affecting title to real property); § 38-35-109(1), C.R.S. 2024.

¶ 18    As relevant here,

> [i]nquiry notice "exists when the purchaser has notice of some fact that, in accordance with human experience, is sufficiently curious or suspicious that the purchaser should be obliged to make a further inquiry into it. If a reasonable inquiry would reveal that there is another outstanding interest, then the purchaser is on inquiry notice of that interest."

*Littlefield v. Bamberger*, 32 P.3d 615, 618 (Colo. App. 2001) (quoting 14 *Powell on Real Property* § 82.02[1][d][iv], at 82-71 (Michael Allan Wolf ed., 2000)); *accord Franklin Bank, N.A. v. Bowling*, 74 P.3d 308, 313 (Colo. 2003).

¶ 19    Relatedly, documents outside the chain of title provide notice of an interest if "a possible irregularity appears in the record which indicates the existence of some outside interest by which the title may be affected."  *Collins*, 943 P.2d at 22.  In such cases, a party "is bound to investigate and is charged with knowledge of the facts to which the investigation would have led."  *Id.*; *see also Nile Valley Fed. Sav. & Loan Ass'n v. Sec. Title Guarantee Corp. of Balt.*, 813 P.2d 849, 852 (Colo. App. 1991) ("A title searcher is not required to examine documents outside the chain of title unless a possible irregularity in the chain of title appears in the record.").

¶ 20    Where the relevant facts are undisputed, the issue of whether a party had inquiry notice of a property interest presents a question of law.  *See Franklin Bank*, 74 P.3d at 315; *see also Collins*, 943 P.2d at 23.  But where it's unclear whether further investigation would've revealed a particular claim, that issue becomes a factual question for the fact finder.  *See Littlefield*, 32 P.3d at 618-19.

### B.    Analysis

¶ 21    The trial court concluded that "there was no indication in the grantor-grantee index of any conveyance of interest by [Menucha] to

8

[Dyles], or of any irregularity that would cause a title searcher to inquire further."

¶ 22    We disagree with this conclusion.

¶ 23    The parties don't dispute that the Dyles deed of trust didn't appear in a search for "Menucha" in the Denver County Clerk and Recorder's grantor-grantee index.  However, the parties also don't dispute that such a search did reveal the Dyles note.  Thus, while Cost Fund and other interested parties may not have had actual notice of the Dyles deed of trust, they clearly had notice of the Dyles note as of the time of its recording in April 2019.

¶ 24    And the Dyles note signified a "possible irregularity" insofar as it "indicate[d] the existence of some outside interest by which the title may be affected." *Collins*, 943 P.2d at 22.  The note provides the address and description of the property and indicates that the property is securing a $42,360 loan.  The note also includes four separate references to the Dyles deed of trust and its role in securing the note:

- The top line of the note provides, "Do not destroy this original note, together with the DEED OF TRUST securing same . . . ."

- The next line states, in a centered bold heading, "NOTE SECURED BY DEED OF TRUST."

- Paragraph 5 of the note provides, "The indebtedness evidence [sic] by the Note is secured by the Property via a Deed of Trust dated March 29, 2019, is [sic] to be recorded by the Lender in Denver County within 24 hours of execution of this note."

- Paragraph 8 reiterates, "This is secured by the above described DEED of TRUST to Kerry L Dyles as trustee and beneficiary."

¶ 25    These provisions and repeated references to a related deed of trust clearly indicate that there may be a recorded deed of trust securing an interest in the property. Thus, Cost Fund, when it obtained an additional interest in the property by entering into the modification agreement, "[wa]s bound to investigate" the note further and "is charged with knowledge of the facts to which [such an] investigation would have led." *Id.*; *see also Franklin Bank*, 74 P.3d at 313; *Littlefield*, 32 P.3d at 618; *Nile Valley*, 813 P.2d at 852.

¶ 26    But it's not clear from the summary judgment record exactly what an investigation into the Dyles note would have revealed. The

record indicates only that the Dyles deed of trust didn't appear in a search for "Menucha" in the grantor-grantee index but did appear in a search using the specific reception number in the reception number index. It's unclear what any other property records searches would have revealed. It's also unclear how the title company later found the deed of trust. And, more generally, it's unclear what measures Cost Fund should have taken to investigate the Dyles note and whether those measures would've revealed the associated Dyles deed of trust.

¶ 27 Consequently, the trial court shouldn't have granted summary judgment on this issue. Instead, a trial is necessary to determine whether an investigation into the Dyles note would've revealed the Dyles deed of trust and, thus, whether Cost Fund is charged with knowledge of the Dyles deed of trust at the time it entered into and recorded the modification agreement. If so, then Cost Fund's interest in the modification agreement is subject to the superior Dyles deed of trust, *see Collins*, 943 P.2d at 22; § 38-35-109(1), so long as the Dyles deed of trust is valid. We turn to that issue next.

11

## IV.  Spurious Document

¶ 28  Dyles also contends that the trial court erred by concluding that his deed of trust was a spurious document.  More specifically, he argues that the Dyles deed of trust is not a spurious document or, alternatively, that there is a factual dispute as to whether it is a spurious document.  Again, we agree that this issue presents a factual question and, therefore, that summary judgment was not appropriate.

### A.  Applicable Law

¶ 29  Section 38-35-204 entitles a property owner to seek relief based on the recording or filing of a spurious document.  Under the statute, a spurious document is "any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." § 38-35-201(3), C.R.S. 2024.  This includes a "wild deed," which is created when someone with no interest in a property attempts to convey it to another via a deed of trust.  *Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 52*, aff'd on other grounds*, 2016 CO 31; *GMAC Mortg. Corp. v. PWI Grp.*, 155 P.3d 556, 558 (Colo. App. 2006).

¶ 30     The issue of whether a corporate officer or agent executed an instrument in their individual capacity or in their corporate capacity presents a factual question.  *See Sago v. Ashford*, 358 P.2d 599, 600 (Colo. 1961); *Abrams v. Colo. Seal & Stripe, Inc.*, 702 P.2d 765, 768 (Colo. App. 1985); *St. Vrain Dev. Co. v. F. & S. Dev. Co.*, 470 P.2d 49, 55 (Colo. App. 1970).

¶ 31     The interpretation of a deed of trust is an issue of law that we review de novo.  *Janicek v. Obsideo, LLC*, 271 P.3d 1133, 1138 (Colo. App. 2011).  Courts interpret a deed of trust applying basic contract principles, which means that they determine the parties' intent from the language of the instrument.  *Id.*  If the deed of trust is unambiguous, then the court must enforce it according to its plain language.  *Id.*  But if it's ambiguous, then the court may consider extrinsic evidence to ascertain the parties' intent.  *Id.*

### B.     Analysis

¶ 32     The trial court acknowledged that "Cost Fund does not dispute that Sirota possessed the authority to execute instruments on behalf of Menucha."  Indeed, Menucha recorded a statement of authority indicating that Sirota is a member with authority "to

13

execute instruments conveying, encumbering, or otherwise affecting title to real property on behalf of the entity."

¶ 33     Nonetheless, the court concluded that "on the face of the deed, Sirota did not indicate that he was executing [his] authority" to sign instruments on Menucha's behalf.

¶ 34     We agree that it's not entirely clear whether Sirota executed the Dyles deed of trust in his individual or his corporate capacity. But we disagree with the trial court's conclusion that this means Sirota necessarily executed the document in his individual capacity. Instead, it signifies a factual question on the issue.

¶ 35     The Dyles deed of trust defines "Aharon Sirota of Menucha Enterprise LLC" as "Trustor"; repeatedly refers to "Trustor" for the remainder of the document; and bears a signature by "Aharon Sirota (Trustor)." While Menucha is identified in the deed of trust, Menucha isn't itself defined as the trustor; instead, the trustor is Sirota "of" Menucha. Nor does the document bear a corporate seal or an identification of Sirota's title with Menucha, either of which might have more clearly signified that Sirota executed the document in his corporate capacity. *See St. Vrain Dev. Co.*, 470 P.2d at 55 (the presence of a corporate seal and the two signers' corporate

titles supported a trial court's finding that the signers executed a note in their corporate capacities).[3]

¶ 36    Accordingly, we conclude that the Dyles deed of trust is ambiguous as to whether Sirota executed it in his individual or corporate capacity.[4]  Thus, the trial court should have denied Cost Fund's motion for summary judgment and allowed the parties to present extrinsic evidence regarding the intent of the parties to the Dyles deed of trust.  *See Ruiz*, ¶ 8; *Janicek*, 271 P.3d at 1138.

¶ 37    We therefore reverse the entry of summary judgment, as well as the order awarding attorney fees and costs under the spurious document statute, and we remand the case for further proceedings.

---

[3] The Dyles note reveals the same lack of clarity, as it similarly lists the borrower as Sirota "of" Menucha.  This contrasts with the Cost Fund deed of trust, which lists "Menucha Enterprise, LLC" as the grantor; bears Sirota's signature along with his title as "Member"; and shows the signature line directly under a line reading "Menucha Enterprise, LLC, a Colorado limited liability company."

[4] We decline Cost Fund's invitation to apply a Uniform Commercial Code provision regarding the signature of a representative on a negotiable instrument.  That provision relates to a representative's liability on a negotiable instrument vis-a-vis a holder in due course who takes an interest without notice — a scenario entirely different from that we're presented with here.  *See* § 4-3-402(b)(2), C.R.S. 2024; *see also* § 4-3-102(a), C.R.S. 2024.

## V.    Appellate Costs and Attorney Fees

¶ 38    Cost Fund seeks appellate costs and attorney fees based on its spurious lien claim.  *See* § 38-35-204(2).  Because we are reversing the judgment and remanding for further proceedings, Dyles (not Cost Fund) is entitled to recover his appellate costs, and any award of attorney fees would be premature.  On remand, Dyles may seek recovery of his costs from this appeal.  And the trial court may consider any requests by either party for recovery of attorney fees for the entire proceeding, including this appeal, when it has reached a final resolution on the merits.

## VI.    Disposition

¶ 39    The judgment and the attorney fee order are reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE TOW and JUDGE KUHN concur.